Richard W. **DUNNIGAN**, Petitioner,

v.

John P. **KEANE**, Superintendent, Sing Sing Correctional Facility, Respondent.

No. 94–CV–6381L.

United States District Court, W.D. New York.

July 23, 1997.

---

Julie Lewis, Harris, Beach & Wilcox, Rochester, NY, for Petitioner.

Emil J. Bove, James L. Gelormini, Office of New York State Attorney General, Rochester, NY, for Respondent.

## INTRODUCTION

LARIMER, Chief Judge.

Following a jury trial in Ontario County Court, petitioner Richard W. Dunnigan ("Dunnigan") was convicted of Robbery, 2nd degree and Assault, 2nd degree and related offenses arising out of the robbery and assault of Jennifer Zielinski and Robert Nuchereno. He was sentenced to a term of imprisonment for a period of twelve to twenty-four years and is now in custody at the Sing Sing Correctional Facility.

The Appellate Division, Fourth Department, affirmed Dunnigan's conviction, *People v. Dunnigan*, 188 A.D.2d 1052, 592 N.Y.S.2d 207 (4th Dept., 1992), and the Court of Appeals denied leave to appeal.

Dunnigan's motion for collateral relief, pursuant to C.P.L. § 440.10, was also denied and the Appellate Division, Fourth Department denied Dunnigan permission to appeal on March 4, 1993 and the Court of Appeals dismissed Dunnigan's application for permission to appeal on April 22, 1993.

Dunnigan filed a petition for a writ of habeas corpus in this Court on August 10, 1994. Respondent filed a motion to dismiss the petition on November 28, 1994, on the ground that the petition contained unexhausted claims. By Order dated May 31, 1995, this Court found that the petition was a mixed petition containing both exhausted and unexhausted claims. The Court gave Dunnigan leave to withdraw the unexhausted claims and he did so. On June 10, 1996, this Court appointed counsel for Dunnigan.

## FACTS

On September 3, 1989, an intruder entered the hotel room of Jennifer Zielinski ("Zielinski") and Robert Nuchereno ("Nuchereno") at the Sheraton Inn in Canandaigua, New York. The intruder assaulted Zielinski and robbed her of her purse's contents.

As the robber left the room he confronted Zielinski's boyfriend, Nuchereno. Nuchereno chased the intruder outside the building and they struggled inside an automobile that the intruder attempted to enter to effect his escape. During the struggle, the intruder repeatedly struck Nuchereno over the head with a hard object. Eventually, the robber was able to flee from the scene in the automobile.

Within hours of the robbery, an individual went to various Key Bank ATM locations and depleted Zielinski's bank account with a debit card found in her purse. This individual was videotaped by the bank's surveillance equipment during several of those transactions. From these tapes, approximately thirty-three photographs of the individual were made by one of Key Bank's security officers (Scime).

By its verdict, the jury found that it was Dunnigan who assaulted Jennifer Zielinski, robbed her of her purse's contents and assaulted Nuchereno.

## DISCUSSION

### I. Standard of Review

There are at least two different types of constitutional error that may be claimed in a habeas corpus petition, each of which requires a different standard of review. There are "structural defects," such as deprivation of the right to counsel, that require automatic reversal because they infect the entire trial process. *Brecht v. Abraham-*

son, 507 U.S. 619, 629, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993). There are also trial errors, such as the type presented here, that do not require automatic reversal. "Trial error 'occurs during the presentation of the case to the jury,' and is amenable to harmless-error analysis because it 'may ... be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial].'" Id., *quoting Arizona v. Fulminante,* 499 U.S. 279, 280, 111 S.Ct. 1246, 1249, 113 L.Ed.2d 302 (1991).

■■■ The standard of review for federal courts in reviewing a petition for habeas corpus challenging a state court conviction based on trial error is "[w]hether the ... error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht, supra* at 623, 113 S.Ct. at 1714, quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946). "A number of factors ... are relevant in determining whether a particular error is harmless. Of these factors ... the weight of the prosecution's case against the defendant is the most significant." *Samuels v. Mann,* 13 F.3d 522, 526 (2d Cir.), *cert. denied,* 513 U.S. 849, 115 S.Ct. 145, 130 L.Ed.2d 85 (1994).

■■■ Furthermore, "[w]hen a federal judge in a habeas proceeding is in grave doubt[1] about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch,* 513 U.S. 432, 432, 115 S.Ct. 992, 993, 130 L.Ed.2d 947 (1995); *California v. Roy,* — U.S. —, —, 117 S.Ct. 337, 338, 136 L.Ed.2d 266 (1996).

In this case, I believe that the several errors that occurred during Dunnigan's trial had a substantial and injurious effect on the jury's verdict. I cannot find these errors to be harmless. I believe that Dunnigan's constitutional rights were violated, and he was denied a fair trial. Therefore, Dunnigan's habeas corpus petition must be granted.

## II. Petitioner's Claims

In his petition, Dunnigan advances the following grounds for relief: (1) he was denied a fair trial and due process of law because of tainted eyewitness testimony and testimony concerning his prior criminal history; (2) he was denied a fair trial and due process of law due to prosecutorial misconduct; and (3) he was denied a right to effective assistance of counsel at trial and on his first appeal.

### A. Identification Testimony

■■■ At the time of the robbery, Dunnigan was on parole for a prior conviction and his parole officer was Eugene Baes. The prosecutor called Baes as a witness to identify Dunnigan as the person depicted in the bank's surveillance photograph at the ATM machines and to identify Dunnigan's voice from a threatening message left on Zielinski's answering machine after the robbery.

In spite of Dunnigan's counsel's timely objection, the trial court ruled that the prosecutor could elicit testimony from Baes that he was Dunnigan's parole officer.

Because of that ruling, Baes was allowed to testify that he was a parole officer for the State of New York; that his duties consisted of supervising convicted felons who had been released from state prison; and that he had supervised Dunnigan as a parolee after Dunnigan's release from the Attica Correctional Facility. Of course, by dint of this testimony, the jury was made aware of the fact that Dunnigan had a prior criminal record, although the jury was not informed of the nature of the crimes for which Dunnigan was on parole.

When this issue arose prior to the beginning of the trial, the court indicated to defense counsel that it would caution potential jurors concerning Dunnigan's parole status during *voir dire* and would permit defense counsel to explore the issue with the prospective jurors. However, there is absolutely no evidence whatsoever that the topic of Dunnigan's parole status was, in fact, discussed

---

1. By "grave doubt," the Court meant that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal* at 435, 115 S.Ct. at 994.

during *voir dire*. Unfortunately, the *voir dire* proceedings were not recorded or transcribed and there is no record of what occurred there. In an affidavit filed in this habeas corpus proceeding, Dunnigan's attorney asserts that this topic was not mentioned at all by the trial court during *voir dire*. No evidence, by affidavit or otherwise, has been submitted by the state to refute this assertion.

Therefore, I can only conclude that respondent does not dispute the fact that the topic of Dunnigan's parole status was not broached during *voir dire*. Also undisputed is the fact that no limiting or cautionary instruction was given to the jury either at the time of Baes' testimony or during the jury charge at the conclusion of the case. Although the trial court said that he would give a "limiting instruction" (Tr. 19), he never did.

It is a well-established and universal maxim that evidence of prior offenses is not admissible to show a defendant's propensity to commit crime. *Old Chief v. United States*, —— U.S. ——, —— –– ——, 117 S.Ct. 644, 650–51, 136 L.Ed.2d 574 (1997). Evidence of prior offenses is excluded due to the potentiality of prejudice "except when it is particularly probative in showing such things as intent; an element in the crime; identity; malice; motive; a system of criminal activity; or when the defendant has raised the issue of his character; or when the defendant has testified and the State seeks to impeach his credibility." *Spencer v. State of Texas*, 385 U.S. 554, 560–61, 87 S.Ct. 648, 652, 17 L.Ed.2d 606 (1967) (citations omitted)(habitual criminal statute which allowed for introduction of proof respecting past convictions, along with cautionary instructions from court, did not violate due process). See *U.S. v. Teague*, 93 F.3d 81, 84 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 708, 136 L.Ed.2d 629 (1997); Federal Rule of Evidence 404(b). See also *People v. Mullin*, 41 N.Y.2d 475, 479, 393 N.Y.S.2d 938, 362 N.E.2d 571 (1977)("It is axiomatic that the prosecution is prohibited from introducing evidence of the past criminal record of a defendant where ... he has not taken the stand in his own behalf or put his character in question.").

Dunnigan did not testify at the trial and did not put his character in evidence. Nevertheless, because of the trial court's ruling, the jury was apprised of the fact that Dunnigan had previously been convicted of a felony, that he had been incarcerated at the Attica Correctional Facility, and that he was on parole at the time of the instant offense. None of those matters was relevant as to whether Dunnigan committed the instant offense. Because there was no cautionary instruction of any kind, the jury was left to speculate as to the nature of the prior offense and there was nothing to prevent the jury from utilizing Dunnigan's prior record for an improper purpose, that is, to establish his propensity to commit crime.

In the present case, the testimony at issue was ostensibly offered for identification purposes. Identity of the perpetrator was the main issue in the trial. Dunnigan's defense was that he could not have been the perpetrator because he was hundreds of miles away from the scene of the crime when it occurred. During the defense case, Dunnigan called several witnesses to testify that he was in the Long Island area at the time of the crime.

However, despite the fact that identity was at issue during the trial, the trial court could have taken simple precautions to allow Baes' identification of Dunnigan without revealing the relationship between the two men. See *U.S. v. Allen*, 787 F.2d 933 (4th Cir.1986)(no error in allowing defendants' parole officers to identify defendants as the persons in bank surveillance photographs where witnesses' occupations were not disclosed); *U.S. v. Farnsworth*, 729 F.2d 1158 (8th Cir.1984)(defendant's parole officers allowed to identify him in bank surveillance photographs of a bank robbery to buttress identification of defendant by several bank employees where neither of the officers revealed their occupation or relationship with defendant); *U.S. v. Butcher*, 557 F.2d 666 (9th Cir.1977)(introduction of identification testimony from defendant's parole officer did not, by itself, amount to an error of constitutional magnitude where no reference made that defendant had a prior felony conviction or that he had ever been arrested on a charge other

than the one involved in the present trial and parole officer was only identified as a "state employee.").

Although Baes' testimony was certainly relevant, there was no necessity to identify his occupation. Allowing such testimony permitted extremely prejudicial information concerning Dunnigan's past to go to the jury, without any cautionary instructions whatsoever.

Baes could have been asked questions to establish how frequently he saw Dunnigan and under what conditions (for example—once a week for a year in a lighted office for fifteen minutes each visit). Such questions would have established Baes' familiarity with Dunnigan and established the necessary foundation for his testimony without eliciting the damaging testimony that Dunnigan was a convicted felon. In short, Baes' testimony that he was a parole officer who supervised convicted felons and that he was Dunnigan's parole officer since Dunnigan's release from Attica was simply not necessary to establish Baes' familiarity with Dunnigan.

The admission of this evidence was exacerbated by the fact that the prosecutor referred to this testimony directly during closing argument. Specifically, the prosecutor stated that:

> Gene Baes is objective in this case. From his testimony there is nothing to indicate an axe to grind against this defendant. You can imagine what a personal setback it is for a parole officer to have one of his parolees commit a crime, go bad. Do you think Gene Baes is going to implicate his parolee in these crimes if he is not one hundred percent certain that this defendant committed these crimes?

(Tr. at 566).

Allowing the evidence concerning Dunnigan's prior record is troubling enough, but allowing the evidence without any cautionary instruction[2] renders the evidence fatally prejudicial and denied Dunnigan a fair trial.

Like the rule that the prosecution may not use for impeachment purposes a defendant's post-*Miranda* silence,[3] the rule that evidence of past crimes may not be used to show propensity to commit the crime for which a defendant is being tried "is rooted in fundamental fairness and due process concerns." *Brecht*, 507 U.S. at 629, 113 S.Ct. at 1717. In the present case, the testimony that Dunnigan was a convicted felon who was released from Attica was highly and unfairly prejudicial. Furthermore, I find that this constitutional error did have a "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos*, 328 U.S. at 776, 66 S.Ct. at 1253.

Although there were certainly strong points to the prosecution's case, I am unable to conclude that the error concerning Dunnigan's prior record was harmless. In large part, this is because there were other substantial errors at Dunnigan's trial which raise grave doubts as to whether Dunnigan received a fair trial. Errors concerning Nuchereno's eyewitness testimony preclude me from finding harmless error when all these matters are considered together.

## B. Nuchereno's Eyewitness Testimony

■ Dunnigan claims that he was denied his right to a fair trial due to the trial court's denial of his motion for a hearing relating to the photographic identification of Dunnigan by Nuchereno.

Thirty-three photographs were made from a surveillance tape which displayed the area in front of Key Bank's ATM machines. These photographs showed a single individual in front of the ATM machines and included both the date and time that the pictures were taken. One of the bank's security officer's showed these photographs to Nuchereno and Nuchereno positively identified the individual in the photograph as the person who committed the crimes at the Sheraton Inn. In es-

---

2. Because the defendant objected to this evidence when the prosecutor first suggested his intent to elicit it, and because of the court's promise that it would treat the matter during *voir dire*, the court should have given a cautionary instruction during the trial. Dunnigan's counsel's failure to specifically request such an in-

struction does not render the trial court's error harmless.

3. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

sence, this was a single-photo display since Nuchereno was not shown any other photographs and was not asked to make the identification from a group of photographs.

Prior to trial, Dunnigan's counsel moved for a hearing on the identification made by Nuchereno because of the suggestivity of the single-photo display. The trial court denied the motion on the basis that the showing of the photographs was not arranged by the police but rather by a private investigator for Key Bank and, therefore, an identification hearing was not required. Although recognizing that, under New York law, a hearing under these circumstances could have been held, the trial court declined to exercise its discretion to hold a hearing. This finding was affirmed by the Appellate Division, again relying on the fact that the investigator acted on his own both in preparing the photographs and in showing them to Nuchereno.

■ I find that the state courts were erroneous in determining that a *Wade*-type hearing was not required because it was a private investigator and not the police who arranged the showing of the photographs. The concern here is not with improper police conduct, but with the accuracy of the identification of the perpetrator by a victim. In *Thigpen v. Cory*, 804 F.2d 893 (6th Cir.), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3196, 96 L.Ed.2d 683 (1987), the court held that the state courts and federal district court were erroneous in relying on the fact that police officers did not cause the confrontations between the witness and defendant in concluding that the pre-identification encounters were not unduly suggestive. The court stated that "the deterrence of police misconduct was not the basic purpose for excluding identification evidence." *Id.* at 895. Rather, it is the likelihood of misidentification that violates a defendant's right to due process. As such, only the effects of, rather than the causes for, pretrial identification encounters should be determinative of whether the confrontations were unduly suggestive. *Id.* See also *Green v. Loggins*, 614 F.2d 219, 223 (9th Cir.1980) ("a court is obligated to review every pretrial encounter, accidental or otherwise, in order to ensure that the circumstances of the particular encounter have not

been so suggestive as to undermine the reliability of the witness's subsequent identification."); *U.S. v. Bouthot*, 878 F.2d 1506, 1516 (1st Cir.1989)("federal courts should scrutinize all suggestive identification procedures, not just those orchestrated by the police, to determine if they would sufficiently taint the trial so as to deprive the defendant of due process.").

■ I agree with the circuits that have held that all suggestive pretrial identifications warrant scrutiny, regardless of who orchestrated the encounter. Irreparable misidentification is the harm sought to be avoided regardless of how it happens to occur. Determining whether the use of identification testimony is unconstitutional in a particular case involves a two-step process. First, the court must evaluate the suggestiveness of the pre-identification encounter. If the encounter is unduly suggestive, the court then must consider the totality of circumstances to determine whether there are nevertheless sufficient indicia of reliability to allow the identification evidence. See *Manson v. Brathwaite*, 432 U.S. 98, 106, 97 S.Ct. 2243, 2248–49, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972). "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson* at 106, 97 S.Ct. at 2249. The factors a court considers in evaluating the reliability of an identification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil*, 409 U.S. at 199, 93 S.Ct. at 382. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253.

■ In this case, the pre-identification procedure was clearly unduly suggestive. After converting the surveillance videotape to photographs which depict an individual at

the ATM machine attempting to withdraw money from Zielinski's account, Scime telephoned Nuchereno and told him that he had some pictures he wanted Nuchereno to see. At trial, Nuchereno indicated that he knew to what the pictures referred because there was only one reason why Scime would contact him. Nuchereno knew Scime was the bank detective who was investigating the ATM fraud. When Nuchereno arrived at Scime's office, he was shown thirty-three pictures of the same individual at the ATM machine. He was not shown pictures of anyone else. At the time of this viewing, it is clear that Nuchereno knew that someone had used his girlfriend's bank card to deplete her account. The photographs, of course, depicted this individual engaged in precisely that type of activity. Although proof that a person had possession of recently stolen property may lead to an inference that he was the perpetrator of the robbery, there are certainly other conclusions that might be drawn from the evidence which are consistent with defendant's alibi defense. Dunnigan could have received the wallet from the robber or found it discarded after the robbery. The point is that identification of the robber was the single most important and disputed issue in this case, and it is clear to me that the procedure used here concerning the single photo display was unduly and highly suggestive.

Even if the encounter was unduly suggestive, it must next be determined whether there was nevertheless sufficient independent indicia of reliability to allow Nuchereno's testimony concerning his identification of Dunnigan. Generally a pretrial *Wade* hearing is necessary to develop facts necessary to establish some independent basis for the identification. This is precisely what defense counsel requested, to no avail. Without that hearing, we do not have the benefit of the trial court's findings and defense counsel was precluded from fully exploring the identification matter. He was relegated to cross-examining Nuchereno at trial after the testimony had already been received by the jury. Because there was no hearing, factors relating to the reliability of the identification must be gleaned from the trial testimony.

The factors supporting a finding that Nuchereno's identification was reliable include the fact that the confrontation with the assailant occurred in a seemingly well-lit room with Nuchereno and the assailant in close proximity to each other. Further, Nuchereno was shown the surveillance photographs only a few days after the crime occurred. When shown the photographs, Nuchereno was not hesitant or equivocal but rather was certain that the person pictured in the photographs was the same person he had confronted in his hotel room.

Several factors militate against a finding of reliability. The confrontation during the crime lasted only a couple of minutes and, during part of that time, Nuchereno's head was buried in the assailant's chest, preventing Nuchereno from seeing the assailant's face. Further, given the sudden, unexpected and violent nature of the fleeting incident, it could not be expected that Nuchereno was able to pay close attention to the facial characteristics of the assailant.

Lastly, Nuchereno's description of the assailant given to police immediately after the incident contained some discrepancies when compared to Dunnigan's actual appearance.

For example, Dunnigan's actual description is: white male, mid-thirties, six feet one inch tall, 210 pounds, with receding gray hair and a moustache. See Petitioner's Supplemental Memorandum of Law, filed September 6, 1996, p. 17; Memorandum of Law in Support of Petition, filed August 10, 1994, p. 28. At trial, Nuchereno gave a very general description of his assailant: white male, 5' 10", "good build" with a "high forehead" and "bugged eyes." (Tr. 129). On cross-examination, he was shown a statement that he gave to the police at the time of the robbery (Def. Ex. A), which did not contain many of the descriptive items mentioned by the witness at trial. (Tr. 130–134). In addition, there was no mention either at trial or in the original police report of defendant's moustache which is depicted in the ATM surveillance photos which were taken on the day of the robbery.

Additionally, as stated above, against the factors supporting the reliability of the identification, the corrupting effect of the sugges-

tive identification itself must be weighed. In this case, the suggestive identification was highly corrupting. Under the circumstances of this case, it is hard to imagine a more suggestive procedure.

In light of the facts before me and weighing the corrupting effect of the highly suggestive identification procedure used by Scime, I find that the pretrial identification did not contain sufficient indicia of reliability. Thus, the use of the identification at trial violated Dunnigan's due process rights. Although I decline to find that this error, standing alone, had a "substantial and injurious effect" on the jury's verdict [4], when considered in conjunction with the testimony concerning Dunnigan's parole status, the cumulative effect of the two errors provides more than a sufficient basis to find that Dunnigan's trial was fundamentally unfair.

### III.  Cumulative Error Analysis

As stated above, I find that the trial court's error in allowing Baes to testify as to Dunnigan's parole status was sufficiently egregious by itself so as to grant Dunnigan's petition for a writ of habeas corpus. However, when factoring in the trial court's additional constitutional error regarding its denial of a *Wade*-type hearing on Nuchereno's pretrial identification of Dunnigan, the cumulative effect of the two errors clearly support the conclusion that Dunnigan is entitled to a new trial.

"The issue of the cumulative effect of a number of different trial errors on a criminal defendant's right to a fair trial has not been addressed directly by either the Supreme Court or the Second Circuit Court of Appeals." [5]  *Collins v. Scully,* 878 F.Supp. 452, 459 (E.D.N.Y.1995).  However, many circuits utilize some form of cumulative error analy-

sis with respect to trial errors.  See *Derden v. McNeel,* 978 F.2d 1453, 1454 (5th Cir.), *cert. denied,* 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993);  *Lundy v. Campbell,* 888 F.2d 467, 481 (6th Cir.1989), *cert. denied,* 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990);  *Bell v. Duckworth,* 861 F.2d 169, 170 (7th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989);  *Walker v. Davis,* 840 F.2d 834, 838 (11th Cir.1988).  But see *Scott v. Jones,* 915 F.2d 1188, 1191 (8th Cir.1990)("each habeas claim must stand or fall on its own"), *cert. denied,* 499 U.S. 978, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991).

In *Derden,* for example, the court held that federal habeas relief was available for cumulative errors but only where "(1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process' " *Derden, supra* at 1454, quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

Here, both errors certainly involved matters of constitutional dimension and were not mere violations of state law.  Furthermore, the errors involved the testimony of two of the most important witnesses at the trial, i.e., Baes and Nuchereno.  Baes' testimony, as discussed above, informed the jury that the person before them, charged with violent and serious crimes, was previously convicted of a felony and was incarcerated at a corrections facility that is widely known to house violent criminals.

Nuchereno was the most crucial identification witness.  The other eye-witness viewed

---

4. This is a close question.  The only other witness to the actual crime who identified Dunnigan at trial was a friend of Nuchereno's and Zielinski's who saw the assailant from her hotel room while he was seated in his car struggling with Nuchereno.  The description which she gave of the assailant was quite general and broad.  She described the assailant as a white male, with "light brownish blonde hair which came over the ears slightly ... looked a little heavier ... more of a bigger build."  Trial transcript, p. 192.  Zielinski made no identification.

5. In *Floyd v. Meachum,* 907 F.2d 347, 353–357 (2d Cir.1990), the Court of Appeals did address the issue of the cumulative effect of a prosecutor's remarks during summation, and found that the denial of the right to a fair trial would exist where the cumulative effect of the prosecutor's remarks was so prejudicial that it rendered the trial in question fundamentally unfair.

the assailant for only a short period of time from her hotel room. Every other identification of Dunnigan stemmed from the photographs taken of a person at an ATM machine attempting to withdraw money. Thus, Nuchereno's identification of Dunnigan was very important to the state's case.[6]

The magnitude of these two errors convinces me that they did so infect the entire trial that Dunnigan's conviction violated due process and cannot stand.[7]

### CONCLUSION

The petition for a writ of habeas corpus is granted, and respondent and the state are ordered to release Dunnigan from custody unless the state provides Dunnigan with a new trial within ninety (90) days of the date of entry of this order.

IT IS SO ORDERED.

---

**6.** There were other errors that occurred throughout the course of the trial, including improper comments made by the prosecutor during his summation. In particular, the prosecutor improperly vouched for the testimony of Baes and commented that a defense witness "lied through her teeth." Trial transcript, pp. 566, 572. While I find that the prosecutor's impermissible comments do not, in and of themselves, rise to the level of a constitutional violation, they are indicative of the atmosphere surrounding the entire trial.

**7.** Given my determination that Dunnigan is entitled to a writ of habeas corpus based on Baes' improper testimony and the trial court's failure to provide Dunnigan with a *Wade*-type hearing regarding Nuchereno's pretrial identification, I will not address Dunnigan's remaining claims of ineffective assistance of trial and appellate counsel, except to state that I have examined those claims and find them to be without merit.