**Darryl B. WALKER,
Petitioner–Appellant,**

v.

**J.O. DAVIS, Warden,
Respondent–Appellee.**

No. 86–7547.

United States Court of Appeals,
Eleventh Circuit.

March 23, 1988.

Barre C. Dumas, Mobile, Ala., for petitioner-appellant.

James F. Hampton, Sp. Asst. Atty. Gen., Montgomery, Ala., for respondent-appellee.

Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and PECK,[*] Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge:

Petitioner Darryl B. Walker appeals from the district court's denial of his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. This appeal presents the question of whether petitioner's state court conviction was rendered fundamentally unfair due to the conduct of the prosecuting attorney acting both as prosecutor and witness. This issue must be viewed in light of the failure of petitioner's trial counsel to make a specific objection concerning this matter.

I

Petitioner-appellant Darryl B. Walker is an Alabama prisoner serving a life sentence for the murder of Charles Phillips. The theory of the prosecution at trial was that Walker had been hired by Phillips's wife and Lloyd Phelps to commit the murder. The State's first three witnesses testified as to the location of the victim's body and to the cause of death. Sam Evins next testified that he had been contacted by Phelps and Phillips's wife to find a "hit man" to murder Charles Phillips. His search for a "hit man" led him to Walker. He testified that he and Phelps discussed the idea with Walker and that on the day of the murder he saw Phelps give Walker

---

[*] Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

some money. Evins acknowledged that he would have testified differently and would have testified in Ms. Phillips's behalf if she had paid him off as promised. The next and final witness for the State in its case in chief was the District Attorney and prosecutor for the case, James A. Hendrix. Hendrix testified that Walker confessed to the murder in his office and Hendrix then related the details of that oral confession to the jury. Hendrix also testified as a rebuttal witness at the conclusion of defendant's case.

Walker testified in his own defense. He stated that his "confession," which occurred several months before trial, was a part of a plan agreed upon by Hendrix and himself. Walker claimed that it was manufactured by Hendrix in order to convict Sharon Phillips. (Mrs. Phillips was subsequently tried and acquitted prior to Walker's trial.) Walker testified that he had been in jail for a considerable period of time and that the District Attorney had ample information to convict him on drug charges. Walker stated that Hendrix promised him that, if he testified in a fashion designed to convict Mrs. Phillips, Walker would be sentenced under the Alabama Youthful Offender Act, and, as a result, his sentence would be no greater than three years. Walker and Hendrix were the only two witnesses who gave testimony regarding the confession.

The District Attorney conducted all portions of the trial except his own examination and the initial portion of the State's closing argument. Assistant District Attorney David Whetstone filled in for Hendrix only on those two occasions. Whetstone's portion of the closing argument was primarily to highlight the difference in the credibility of the witnesses, particularly emphasizing Hendrix's twenty-one years of elected service to the community.

After the adverse jury verdict Walker challenged his state court conviction through the Alabama state court system. Walker raised on direct appeal the two issues advanced in his habeas corpus petition. He claimed that his conviction was based upon an improperly admitted confession, and secondly that the conviction was based upon the improper testimony of the prosecution.[1] The state criminal court of appeals declined to address the merits of the issue of the prosecutor testifying as a witness because of petitioner's failure to object at trial. *Walker v. State,* 386 So.2d 762 (Ala.Crim.App.1980). Walker then filed a writ of habeas corpus petition in district court. The United States Magistrate found that the case involved "a gross violation of the advocate-witness rule" but concluded that the trial was not rendered fundamentally unfair, which is the required test in such a review of a state court conviction. The district court affirmed the magistrate's recommendation.

Walker's alleged confession occurred several months before his trial. The District Attorney knew from that date that he would be a critical witness in the government's case and, in fact, Hendrix discussed it at the pre-trial suppression hearing. In fact, Hendrix and Walker were the only two witnesses to give testimony concerning Walker's alleged confession.[2] As stated by the magistrate, "The critical issue before the jury was resolution of the conflicting accounts of the confession." The credibility issue was further complicated when Hendrix cross-examined Walker concerning what Walker actually told Hendrix in their meeting. The following exchange occurred:

> Hendrix: During the course of your statement to me, do you remember telling me that Phelps pulled up in the driveway?
>
> Walker: Yes sir I do.

**1.** While appellant's argument on the voluntariness of the confession issue is not unpersuasive we express no opinion on that question.

**2.** We are unable to determine from the record whether anyone else could have testified concerning this matter. The State contends that another prosecutor and a secretary were in the room at the time Walker confessed. Petitioner asserts that the others were "in and out of the room" and that, logically, if the State had any other witness who could testify regarding the confession the State would have called them.

Hendrix: Is that when he let you out of the car?

Walker: Yes sir I remember you telling me that. I remember you telling me that and I repeated it to you.

Hendrix: I told you that? And then you are saying that you repeated it to me?

Walker: Yes, sir.

Hendrix: You are lying.

Following the defendant's case, the District Attorney was again called as the only rebuttal witness. Hendrix began his testimony without being asked a question. When the defendant's counsel made an objection to Hendrix's narrative, Hendrix responded to the Judge from the witness stand in explanation. After identifying several pictures, Hendrix again testified without responding to a question from Whetstone:

Now, the only thing I have to say in rebuttal is that I never told this man what to say. This man told me what happened and I questioned him about what had happened.... And I never told him the things that he was to say, because I just would not do that. He either did it or he didn't do it. I did not put anything in his mouth.

Whetstone then asked Hendrix questions that elicited information concerning Hendrix's "twenty-one years of service for the people of this county."

District Attorney Hendrix began his part in closing argument with the following comments:

Hendrix: May it please the Court and Ladies and Gentlemen of the Jury: Let me start off by telling you that I want to apologize to you to start off with for taking the stand in this case. I don't usually do it. And it's the first time that I have ever testified in my life in a murder case. And I am sorry that the circumstances arose to where I felt compelled to do it.

But there just wasn't anyone else to do it and tell the story that he told. I felt that you were entitled to the benefit of hearing that other story.

Now, that's the reason that I took the stand. And I apologize to you for having to get that involved in this case, but I felt like I had to do it.

Hendrix then proceeded to comment on some of the evidence offered during trial:

Hendrix: And there was no gun ever found. Well, do you remember what the Defendant told me that happened to the gun? He said that he went back across the Causeway, that it was raining, that he rolled down the window, and that he threw it out in the bay.

Did you ever get out in the bay and look for a gun?

Enfinger: Judge, I'm going to object I don't believe that that was brought out in the evidence.

Hendrix: Yes, it was. I testified to it.

The Court: Ladies and gentlemen of the Jury: Again, let me repeat to you, you only take the evidence that comes from the stand and draw your own conclusions from it. You remember the evidence as you heard it yourselves.

Hendrix: Now, it's for you to determine what the evidence was, and if I didn't say that, then you may disregard that. But if I did say it, and you do remember it, that's the reason the gun wasn't brought here.

Petitioner-appellant Darryl B. Walker requests a reversal of the district court's denial of his petition for writ of habeas corpus with instructions that he be allowed a new trial in state court. Walker asserts that his previous trial was rendered fundamentally unfair by the prosecutor testifying as a witness to evidence crucial to his conviction, continuing to prosecute the case, and then giving unsworn testimony in closing argument.

## II

The state concedes that there was a violation of the advocate-witness rule in this case. That the prosecutor acted improperly is not in dispute. At issue, first, is whether the prosecutor's conduct was so egregious and influenced the outcome of the trial to such a degree that the rigorous standard of review in a federal habeas review of a state court proceeding is met.

We find that the prosecutor's conduct in this case compels such a result.

■ The proper inquiry when a federal court sits in review of a state court conviction, as in this case, is whether the violation of the advocate-witness rule violates due process, rendering the entire trial unfair. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (involving the habeas corpus review of the impropriety of a state prosecutor's closing argument); *see also Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986) (appropriate standard of review for prosecutorial misconduct claim on federal habeas corpus review is "the narrow one of due process, and not the broad exercise of supervisory power"). This Circuit in *Brooks v. Kemp*, 762 F.2d 1383 (11th Cir.1985), *vacated, Kemp v. Brooks*, —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), later proceeding *Brooks v. Kemp*, 809 F.2d 700 (11th Cir.1987), *cert. denied, Kemp v. Brooks*, —— U.S. ——, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1987), borrowed the outcome determinative analysis from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and held that a determination of fundamental fairness depends on whether there is a reasonable probability that, in the absence of the improper conduct, the outcome would have been different. *Brooks*, 762 F.2d at 1400. Different factors have been utilized by various courts in order to decide whether or not the cumulative errors at trial could be said to have, in reasonable probability, changed the result at trial: 1) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; 2) whether they are isolated or extensive; 3) whether they were deliberately or accidentally placed before the jury; and 4) the strength of the competent proof to establish the guilt of the accused. *Id.* at 1402 (citing *Hance v. Zant*, 696 F.2d 940, 950, n. 7 (11th Cir.1983)).

■ In this case, it is reasonably probable that the prosecutor acting as both advocate and witness misled the jury because of the likelihood that the prosecutor's credibility was enhanced by the prestige of his office. As this court stated in *Drake v. Kemp*, "Arguments delivered while wrapped in the cloak of state authority have a heightened impact on the jury." 762 F.2d 1449, 1459 (11th Cir.1985) (citing *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1934)), *cert. denied, Kemp v. Drake*, —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). Indeed, Mr. Hendrix played upon the respect accorded his office in rebuttal and in closing argument. His assistant, Mr. Whetstone, referred to Hendrix's long tenure in office and to the fact that the people of the county had never failed to return him to office. Hendrix also, in closing, commented upon his twenty-one years as a prosecutor and the fact that he never in his entire career had to testify in a murder case but felt compelled to do so in this very special case. Secondly, this case did not involve merely an isolated remark or a single improper comment. This was a trial in which the advocate for the State testified and then continued to prosecute the case. Certainly there was the danger of confusion on the part of the jury. The jury was placed in a position of being unable to differentiate between Hendrix, the prosecutor and Hendrix, the witness. The damage to the trial process was exacerbated by Hendrix stepping in and out of his roles. Moreover, Hendrix not only knew he would testify but planned for months that he would testify. There was no surprise or urgency. Even if the State was not able to put on another witness who could testify regarding Walker's alleged confession, Hendrix could have at least mitigated the circumstances by not prosecuting the case himself and allowing Whetstone to take his place. Whetstone was with Hendrix at trial and ostensibly could have tried the case with Hendrix's input. Lastly, it appears from the record that without the confession the evidence against Walker was not overwhelming. The State's only other witnesses were the person who found the victim's body, a toxicologist and Sam Evins, who was an accomplice to the murder. Evins's testimony alone would be insufficient because in Alabama a felony conviction "can-

not be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant to the [crime]." Ala.Code § 12–21–222 (1975). *See Strickland v. Washington,* 104 S.Ct. at 2069 ("a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support"); *c.f. Cronnon v. Alabama,* 587 F.2d 246 (5th Cir. 1979) (improper argument not unconstitutional due to overwhelming evidence of guilt).

After considering the circumstances in their entirety, we find that the District Attorney's conduct was so egregrious and prejudicial to a fair trial as to "undermine the confidence in the outcome." *Strickland,* 104 S.Ct. at 2069.

### III

We now turn to the issue created by petitioner's failure to object at trial. In such a situation, the Court in *Wainwright v. Sykes* dictates that there must be sufficient evidence in the record to support a finding of cause for the procedural default and prejudice stemming from the challenged conduct. 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). For reasons stated above, we find that the prejudice component has been satisfied, requiring us to examine the cause issue.

■ The precise definition of cause has not been settled by the courts because of the "virtually limitless array of contexts in which a procedural default can occur." *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984). A defense counsel may not flout a state's procedural rules in the expectation that his client's constitutional claims can be raised at a later date in federal court. *Wainwright v. Sykes,* 433 U.S. at 89–90, 97 S.Ct. at 2507–08. The policy behind the contemporaneous objection rule is "to preserve the integrity of state judicial procedures and to bind a defendant to the tactical decisions of competent counsel, absent a miscarriage of justice." *Reed,* 104 S.Ct. at 2909. The policies of comity and finality stand firm behind this rule, although at times those poli-

cies "must yield to the imperative of correcting a fundamental unjust incarceration." *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982). The Supreme Court has offered some guidelines concerning when the cause requirement may be satisfied such as when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests, or when counsel fails to raise a constitutional issue reasonably unknown to him. *Reed,* 104 S.Ct. at 2909. The Court more recently stated that the existence of cause for a procedural default must ordinarily turn on whether the defendant can show that some external impediment to the defense impeded counsel's efforts to comply with the State's procedural rule. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986).

■ In this case we are only able to guess as to why defendant's appointed counsel did not object at trial. The record is of little assistance on this point. The district court did not hold an evidentiary hearing; only a sketchy *pro se* defendant's memorandum was filed in response to the court's request to demonstrate "cause" for the failure to object; and this matter was also not thoroughly briefed on appeal. *See, e.g., Amadeo v. Kemp,* 773 F.2d 1141 (11th Cir.1985) (involving a remand because of an incomplete record regarding the showing of cause requirement), *later appealed,* 816 F.2d 1502 (11th Cir.1987), *cert. granted,* — U.S. ——, 108 S.Ct. 257, 98 L.Ed.2d 214 (1987). If Walker chooses to rely on an ineffective assistance of counsel claim as the reason for no objection being made at trial, he must exhaust his state remedies with regard to that claim. *See Murray,* 106 S.Ct. at 2646 (holding that ineffective assistance of counsel, but not inadvertent conduct, is cause for procedural default but such a claim must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default).

Accordingly, we retain jurisdiction of this case and REMAND it to the district court with instructions to conduct an evidentiary

hearing limited to a determination of the cause for the procedural default detailed above.