**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-10813

GRANVILLE RIDDLE,

Petitioner-Appellant,

versus

JANIE COCKRELL, Director, Texas Department
of Criminal Justice, Institutional Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Texas

April 15, 2002

Before JOLLY, JONES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Granville Riddle ("Riddle") appeals from the district court's denial of his petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254 (2001). Because we find that the district court did not

err, we AFFIRM.

FACTUAL AND PROCEDURAL HISTORY

Riddle was charged with intentionally causing Ronnie Hood Bennett's ("Bennett") death while in the course of committing the offense of burglary of a habitation with intent to commit theft. On October 9, 1988, Riddle and a friend, Brad Bybee ("Bybee"), went out drinking. The two proceeded to drive to the home of Bennett. Bybee remained in the car. There is no dispute that Riddle entered Bennett's home and used a tire iron to strike Bennett about the head at least fifteen times and that these blows caused his death.

In his initial statement to police, Riddle stated that he entered the premises through a screen window, which he pried open with the tire iron. Riddle explained that Bennett became angry at him for damaging his property and, in an effort to defend himself, Riddle hit Bennett in the knee with the tire iron. When this angered Bennett even more, Riddle proceeded to hit him over the head until he died.

During the course of the trial, however, Riddle maintained that he had consent to enter Bennett's home when the murder occurred.[1] He testified that he took a tire iron with him, which he intended to use to pry the screen off the kitchen window; however, when he arrived, he found a sliding door unlocked.[2] Riddle testified that Bennett made sexual advances toward him and when he refused, Bennett grabbed him, pulled him down, put his lips on Riddle's ear and a hand on his buttocks. According to Riddle, he then hit Bennett with the tire iron repeatedly, causing his death. He averred that after he realized that Bennett was dead, he tried to make the home look burglarized in an attempt to cover up for his actions.

---

[1] Riddle testified that the victim was a close friend, whom he described as almost akin to a stepfather.

[2] The kitchen window, however, was found pried open at the premises.

Bybee testified that Riddle called him into the home, pointed to a few items piled on the floor, and informed him that the items were theirs to keep. Bybee also testified that Riddle remarked that he wanted "to see how strong [Bybee's] stomach [was]," and Riddle hit Bennett in the head once more, imbedding the tire iron into Bennett's skull. Bybee then surreptitiously left. It was at this point, according to Riddle, that he panicked, grabbed Bennett's wallet and his truck, and left.

Danny Hill ("Hill"), the Potter County District Attorney, served as chief prosecutor during the trial. In an effort to explain several of his attempts to escape from prison[3] while incarcerated pending trial, Riddle testified that he was afraid because Hill had told him after his first arraignment that "he was going to do his damnest [sic] to make sure [he] got the death penalty."[4] To rebut this testimony, Hill called several witnesses.[5] Hill also took the stand.[6] Subsequently, he continued to prosecute the case. At closing argument, the assistant prosecutor argued that Riddle should be viewed as incredulous, because Hill had shown, through his testimony, that Riddle was a liar.

On November 3, 1989, Riddle was convicted for the capital murder of Bennett. He was sentenced to death. Automatic appeal to the Texas Court of Criminal Appeals was taken and his conviction and sentence were upheld. The United States Supreme Court denied *certiorari* review.

---

[3] One attempt was successful. Riddle was subsequently apprehended, however, and returned to prison.

[4] Riddle was arraigned three times: First for murder, second for capital murder, and third for charges relating to his subsequent escape from jail before trial.

[5] Among the witnesses was the judge from the first arraignment and the court reporter from the second arraignment. The judge testified that he had no specific recollection of the arraignment or those in attendance. He stated, however, that he would have remembered such a statement by a prosecutor to a prisoner and that he did not recall any such statement. The court reporter testified that there was no record of Hill being in the courtroom at the first arraignment. She also testified that she did not personally recall Hill's presence.

[6] The prosecutor also rebutted the allegation with a letter Riddle wrote explaining that he had escaped because he had no confidence in his legal representation.

On August 25, 1995, the federal district court stayed Riddle's execution. It then appointed Riddle counsel and ordered that a petition for habeas corpus relief be filed or that the court be notified of the intent to apply for state habeas relief. On January 22, 1996, Riddle filed a notification of his intent to return to state court to seek state habeas corpus rel ief. On August 21, 1996, the district court denied Riddle's "Motion to Hold Proceeding in Abeyance to Continue Appointment of Currently Appointed Federally Funded Co unsel and to Permit Federally Appointed Counsel to Work on Exhaustion of Unexhausted Claims in the State Court of Texas." Subsequently, on November 7, 1996, the district court dismissed the cause and lifted the stay of execution. On October 10, 1996, Riddle filed an application for state writ of habeas corpus, which the Texas Court of Criminal Appeals denied. On March 4th and 5th of 1997, respectively, Riddle filed motions with the district court for the appointment of counsel and to proceed *in forma pauperis*. These motions were granted. On September 5, 1997, Riddle filed the instant petition for writ of habeas corpus. On March 19, 1998, the district court granted Riddle's motion to file a supplemental memorandum of law in support of his request for an evidentiary hearing. The State filed an answer to the writ of habeas corpus and a motion for summary judgment, which the district court granted. On September 14, 1998, Riddle filed a *pro se* motion for an evidentiary hearing, which was also denied. Riddle appeals from the district court's grant of summary judgment against him and from the denial of habeas relief. He again requests an evidentiary hearing.

DISCUSSION

This Court may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

4

by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (2001).[7] "A state court's decision will be contrary to clearly established federal law when it reaches a legal conclusion in direct opposition to a prior decision of the United States Supreme Court or when it reaches a different conclusion than the United States Supreme Court on a set of materially indistinguishable facts." Kutzner v. Johnson, 242 F.3d 605, 608 (5th Cir. 2001). Moreover, "[a] state court's decision will be based on an unreasonable application of clearly established federal law when it is objectively unreasonable." Id.

I. Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court set forth a two-prong test for deciding ineffective assistance of counsel claims. 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient." Id. To prove deficiency, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, a defendant must show that the deficient performance resulted in actual prejudice. Id. at 687. A showing of prejudice requires the defendant to prove that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

___

[7] Because Riddle filed his petition on September 5, 1997, his application is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996). See Lindh v. Murphy, 521 U.S. 320, 336 (1997).

5

Strickland and its companion case, United States v. Cronic, 466 U.S. 648 (1984), gave specific guidance on finding prejudice. In Strickland, the Court stated that in certain limited circumstances, prejudice may be presumed. 466 U.S. at 692. In Cronic, the Court identified three distinct situations in which a presumption of prejudice is appropriate. First, prejudice may be presumed when the defendant is completely "denied counsel at a critical stage of his trial." Cronic, 466 U.S. at 659. Second, per-se prejudice occurs if there has been a constructive denial of counsel. This results when a lawyer "entirely fails to subject the prosecution's case to meaningful adversarial testing," thereby making "the adversary process itself presumptively unreliable." Id. Third, the Court identified certain circumstances where "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." Id. at 659-60. Absent these narrow circumstances where prejudice may be presumed under Cronic, a defendant must show actual prejudice under Strickland. See Strickland, 466 U.S. at 692; Cronic, 466 U.S. at 666 & n.41. Actual prejudice requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Riddle argues that he was denied effective assistance of counsel because of his trial counsel's failure to object to Hill's testimony during the guilt/innocence phase of the trial and his continued prosecution of the case. He asserts that his counsel's performance was defective and that prejudice should be presumed. In the alternative, he asserts that if prejudice cannot be presumed, then he should be afforded an evidentiary hearing to develop his claim.

6

A.    Deficiency

Riddle asserts that his trial counsel's performance was akin to that analyzed in Harding v. Davis, in which the Eleventh Circuit held that the trial counsel's performance was deficient because he remained completely silent at trial and allowed the trial judge to direct a verdict against the defendant without objecting.  878 F.2d 1341, 1345 (11th Cir. 1989).  The State counters that Riddle's counsel performance was not deficient because he may have had a strategy for not objecting.

The instant case does not approach the level of deficiency found in Harding.  The record shows that Riddle's counsel did object to various issues throughout the trial, thereby indicating his active participation in Riddle's defense.  The failure to object to Hill's testimony and continued prosecution does not reach the level of complete silence condemned in Harding.  However, the deficiency prong of Strickland is nonetheless satisfied. As the district court noted, Hill's testimony was a "highly questionable and potentially prejudicial trial tactic."  The State fails to offer any persuasive practical or hypothetical reason why failing to object to the chief prosecutor's dual roles as witness and litigator would be sound trial strategy.  Moreover, the State has not cited any cases which condone similar conduct.  Because we cannot find a "reasonable tactical basis for failing" to object to the highly irregular actions of the prosecutor, we conclude that Riddle's counsel was deficient.  See Burns v. Gammon, 260 F.3d 892, 897 (8th Cir. 2001) (explaining that improper comments made by the prosecutor during closing arguments were "constitutionally defective such that any reasonable counsel would have objected under the circumstances" (citation and internal quotations omitted)).

B.    Presumed Prejudice

7

Riddle does not make entirely clear into which category of the presumed prejudice exceptions his trial counsel's deficient performance fits. However, it appears that he is arguing that he was actually or constructively denied the assistance of counsel because his counsel effectively "quit" defending him. He maintains that no reasonable attorney would have sat through the closing arguments in this case without objecting. As such, he maintains that like the defendant in Burdine v. Johnson, he was denied counsel during critical stages of the trial. 262 F.3d 336, 341 (5th Cir. 2001) (finding that prejudice may be presumed when defense counsel slept repeatedly during capital murder trial).

In Gochicoa v. Johnson, we reiterated the narrow instances which may constitute a constructive denial of counsel. 238 F.3d 278, 284 (5th Cir. 2000). These instances include those in which counsel was absent from the courtroom, there was a conflict of interest between the defense counsel and the defendant, or there was "official interference with the defense." Id. In contrast, this Court has refused to find a constructive denial of counsel where "defense counsel investigated only certain issues, where counsel's trial presentation was 'somewhat casual,' where counsel failed to pursue a challenge based on racial bias in jury selection, to object to a variation between the indictment and the jury charge, or to raise a meritorious issue on appeal." Id. Based on Gochicoa's guidance, we cannot find that counsel's performance fits into the narrow category which defines the constructive denial of counsel. While defense counsel's performance regarding this issue was marginal, his actions, or lack thereof, do not equate to the narrow instances we described in Gochicoa. Accordingly, Riddle was not constructively denied counsel. Further, defense counsel's deficient performance cannot be analogized to the semi-conscious performance of defense counsel in Burdine. While a reasonable attorney might have objected during closing arguments, the absence

8

of an objection by Riddle's counsel cannot be equated with the performance of defense counsel in Burdine. 262 F.3d at 341, 347 (finding that Cronic dictates that the absence of a conscious attorney parallels the denial of counsel at a critical stage of trial and that "the trial itself remains a critical stage of any criminal proceeding").

### C. Actual Prejudice

Riddle basically concedes that he cannot meet the burden of proving actual prejudice. As the district court noted, although trial counsel's failure to object to Hill's dual role as witness and advocate was "potentially prejudicial," there was little prejudice to Riddle in view of the strong evidence against him. Riddle does not dispute that he killed Bennett. Instead, he argues that without the multiplicity of errors committed during the trial, the jury may have accepted his theory that he had consent to enter Bennett's home, thereby negating the burglary offense. Because there was overwhelming evidence that Riddle committed the burglary, we reject this contention. For example, the window to Bennett's apartment was pried open, and in his initial confession to the police, Riddle stated that he entered Bennett's home by "pry[ing] his screen window off." However, at trial, Riddle changed his entire version of the events, claiming that he entered through a sliding door. Bybee testified that the sliding door was locked when they arrived. Moreover, the investigator who arrived at the scene, testified that all of the entrances to the home were locked. Bybee also testified that when he entered Bennett's home, Riddle had stacked a few electronic items on the floor and told Bybee "well, that's ours." Further, Riddle could never adequately explain why he carried a tire iron into Bennett's home if he had consent to enter, nor could he explain why Bybee testified that Riddle had bloody socks on his hands when he came out to the car to get him–a fact which indicates that Riddle put the socks on before he committed the murder. Riddle also could not articulate why the

victim still had his glasses in his hand when the police discovered his body if Bennett had in fact been making homosexual advances at him in the manner averred by Riddle. Prosecutors argued that Riddle was in the course of robbing Bennett when he awoke, reached for his glasses to see who was there, and was subsequently bludgeoned. In light of this strong evidence against him, and the fact that Riddle called his own credibility into question by altering his version of the events, we agree with the district court that Riddle was not prejudiced by counsel's errors to such an extent that a "reversal of a conviction or death sentence" is warranted. See Strickland, 466 U.S. at 687.

        D.      Evidentiary Hearing

Riddle seeks an evidentiary hearing so that he may flesh out his allegation of prejudice. Section 2254(e)(2) of the Antiterrorism and Effective Death Penalty Act of 1996, however, precludes such a hearing where an "applicant has failed to develop the factual basis of a claim in State court proceedings, . . . unless the applicant" can show that "the claim relies on [either] a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or a factual predicate that could not have been previously discovered through the exercise of due diligence; and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A)(I)-(ii),(B). Riddle concedes that he did not request a hearing at the state level. Because he does not rely on a new rule of constitutional law, Riddle must show that he could not have discovered the factual predicate of his claim through due diligence and that but for the prosecutor's testimony, no reasonable factfinder would have found him guilty. There is nothing in the record to support Riddle's contention that he was prevented from developing his claim of prejudice and he has failed to provide this Court with *any*

10

supporting documentation. He does not explain why he did not provide an affidavit from his attorney at the trial level. Similar to the petitioner in Dowthitt v. Johnson, Riddle has failed to show due diligence. See 230 F.3d 733, 758 (5th Cir. 2000). In Dowthitt, the petitioner argued that he exercised due diligence because he requested evidentiary hearings in state habeas proceedings. Id. We concluded that "[m]ere requests for evidentiary hearings will not suffice; the petitioner must be diligent in pursuing the factual development of his claim." Id. Dowthitt failed to present any affidavits supporting his claim and failed to establish that they "could not be obtained absent an order for discovery or a hearing." Id. We concluded that he did not act diligently because "[a] reasonable person in Dowthitt's place would have at least done as much." Id. Riddle did not pursue his claim as diligently as Dowthitt, as he failed to request a hearing in state court. Additionally, even if Riddle could establish due diligence, due to the overwhelming evidence in this case, he cannot show that "but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." § 2254(e)(2)(B).

Finally, even after an individual meets the standard set forth in § 2254(e), a district court's denial of an evidentiary hearing is reviewed for an abuse of discretion. Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). Our resolution of the issues demonstrates that Riddle has failed to show how his claims would be advanced by a hearing. Riddle has failed to even hypothesize what type of evidence might be discovered during a hearing or why a hearing is needed to bring forth this evidence. As such, we cannot conclude that the district court abused its discretion.

II.    Fundamentally Fair Trial

Riddle argues that in light of Hill's testimony during the guilt/innocence phase of trial, his continued prosecution of the case, and the closing arguments in which Riddle alleges that the assistant

11

prosecutor argued Hill's credibility to the jury, the district court erred in finding that his trial was fair and that his due process rights were not violated. In reviewing this question, this Court must decide whether Hill's actions or statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Kutzner, 242 F.3d at 609.[8] Essentially, Hill's statements must have rendered "the trial fundamentally unfair [and a] trial is fundamentally unfair if 'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'" Barrientes v. Johnson, 221 F.3d 741, 753 (5th Cir. 2000) (quoting Foy v. Donnelly, 959 F.2d 1307, 1317 (5th Cir. 1992)).

The district court stated that Hill's testimony was not "absolutely necessary" because Hill "could have rebutted Riddle's allegation without testifying [or he] could have also allowed an assistant to complete the remainder of the trial after his becoming a fact witness." The court also stated that Hill's actions were "potentially prejudicial" to Riddle. It nevertheless concluded that Riddle's due process rights were not violated, and the trial was not rendered fundamentally unfair, in view of the strong evidence against Riddle. Moreover, the district court distinguished Walker v. Davis, a case upon which Riddle heavily relies and in which the prosecutor also played dual roles as witness and advocate. See 840 F.2d 834 (11th Cir. 1988). The court noted that the prosecutor's testimony in Walker involved whether the defendant confessed to the murder, a material matter, and one which directly pertained to the murder, the subject matter of the trial. Accordingly, it noted that Hill's testimony differed, as it was offered to rebut Riddle's testimony regarding the statement about the death penalty, a collateral matter.

---

[8] In Darden v. Wainwright, the Supreme Court noted that "the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)).

In addition to Walker, Riddle relies on United States v. Torres, 503 F.2d 1120, 1126 (2d Cir. 1974), for the proposition that it is highly improper for a prosecutor in a case to act as a witness in the same case and that a prosecutor should do so only in the most extraordinary of circumstances. Riddle moreover invokes a factual basis for supporting his contention that the trial court erred, given his argument that Hill's actions and statements attacked Riddle's credibility. This issue is important because if Riddle's argument that he had consent to enter the victim's home had been found credible, it would negate the capital murder conviction, which carries with it the threat of the death penalty. Because the victim could have offered the only evidence upon which to discredit Riddle's recitation of the facts, he argues that Hill was forced to discredit Riddle's credibility by using the prestige and authority of his position as prosecutor to argue that Riddle was incredulous.

In contrast, the State counters that Riddle's argument regarding this issue is a basis upon which he may "cover up" his allegedly varying accounts of the circumstances surrounding the murder, including consent. The State also distinguishes Torres by correctly noting that it was decided on direct appeal from federal criminal convictions, as opposed to during habeas proceedings.

The district court and Riddle are correct that it is indeed highly unusual and potentially prejudicial to have a prosecutor play a dual role as advocate and witness. However, Walker is distinguishable from the facts in the instant case. In Walker, the prosecutor's testimony directly addressed the defendant's guilt or innocence through testifying about the defendant's confession. Walker, 840 F.3d at 836. Moreover, in Walker, during closing argument, the prosecutor's twenty-one years of public service was stressed. Id. Although Walker is distinguishable, we do not condone Hill's actions. It is an almost universally frowned upon practice for a prosecutor to testify at the trial of the case he is prosecuting, whether for or against the defendant. Such a practice should only be

13

permitted in extraordinary circumstances or for compelling reasons. <u>United States v. Birdman</u>, 602 F.2d 547, 553 (3d Cir. 1979). Moreover, it is clearly preferable for the prosecutor to step down after his testimony. Nevertheless, to show prosecutorial misconduct, Riddle must establish that the impropriety of Hill's actions prejudiced his substantive rights. <u>See, e.g.,</u> <u>United States v. Munoz</u>, 150 F.3d 401, 415 (5th Cir. 1998). Again, in light of the strong evidence against Riddle, he has failed to show the requisite substantial effect on his right to fair trial. <u>See</u> <u>United States v. Johnston</u>, 127 F.3d 380, 401 (5th Cir. 1997).

CONCLUSION

For the foregoing reasons, we conclude that Riddle fails to meet the standard required to warrant habeas relief pursuant to 28 U.S.C. § 2254. Accordingly, we AFFIRM the district court. AFFIRMED.