**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 19, 2009

No. 07-50765

Charles R. Fulbruge III
Clerk

NOEL BETANCORT RAMON

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas, San Antonio
No. 5:06-CV-443

Before KING, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Petitioner-appellant Noel Betancort Ramon was convicted of aggravated sexual assault in Texas state court. The prosecutor, Lucy Cavazos, testified during Ramon's trial because she believed that the jury had a false impression about a phone message that she had left for a DNA expert. The judge did not allow cross-examination of the prosecutor and then told the jury to disregard the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

testimony altogether. During her closing remarks, the prosecutor again briefly addressed why she left the phone message for the DNA expert.

The Texas court of appeals affirmed Ramon's conviction. The Texas Court of Criminal Appeals affirmed the court of appeals's ruling and concluded that the trial court's failure to declare a mistrial was not an abuse of discretion, reasoning that Cavazos's conduct was improper but not prejudicial. Ramon's state habeas application was denied without order. The United States District Court for the Western District of Texas denied Ramon's federal writ petition, ruling that the state court did not contravene clearly established federal law as determined by the Supreme Court and reasoning that Cavazos's actions did not deny Ramon due process. This court granted a certificate of appealability solely "as to the issue of whether the prosecutor's conduct rendered Ramon's trial fundamentally unfair." For the following reasons, we affirm the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 24, 2000, Jason Ammann arrived at the home of 74-year-old Marie McGraw and saw petitioner Noel Betancort Ramon sitting next to McGraw in the living room. When Ammann walked in, Ramon stood up, put his shirt on, buttoned his pants, and left the residence. McGraw, visibly upset, then told Ammann that "Noel grabbed her out of her chair and drug [sic] her to the bedroom, threw her on her bed and cut her bra off with a knife and—and that was pretty much it." Police subsequently collected evidence, including a set of palm prints on the bed's headboard and a pink bed sheet that had semen on it. Both the palm prints and the DNA found in the semen matched that of Ramon.[1]

---

[1] The district court noted that "the DNA profile was one that would match only one in 63,300 Caucasians, one in 171,000 Blacks, or one in 19,400 Hispanics." In this appeal, Ramon does not dispute the accuracy of this test.

A knife, found on the dresser in the room where the incident occurred, had fibers on its blade which matched the fabric of McGraw's undergarments.

At trial, defense counsel admitted into evidence a phone message that the prosecutor, Lucy Cavazos, had left for Chad Hainley, a DNA expert: "Noel Ramon case. The grandson and his roommate had access to the home, but they only care about suspect's DNA."[2] In a sidebar, the prosecutor asked to testify in order to correct a possible false impression with the jury that she was "out to get" Ramon. She testified that, instead, she was only interested in Ramon's DNA because she believed that his primary defense would be that he was not at the scene of the crime.[3] Defense counsel began cross-examination by asking, "Isn't it true that we asked you for a biological sample from [McGraw]?" After a sidebar discussion, the court decided to end the testimony for fear that it would "get too far afield" and that "someone is going to say something that is going to create some error." The court instructed the jury to disregard the testimony. At closing argument, Ramon's attorney stated: "Chad Hainley was concerned. That's why he called. We've got other—we've got other semen. Is this a case of economics trying to win over truth and justice?" In her closing argument, the prosecutor said: "Chad Hainley called me to see if we were going to submit any other samples, not because he was concerned."

Ramon was convicted of aggravated sexual assault. On February 11, 2002, the trial court assessed punishment at life in prison. The court of appeals affirmed Ramon's conviction, finding no reversible error. *Ramon v. State*, No.

---

[2] There is some ambiguity about to whom Cavazos was referring with the word "they." The district court stated in its Memorandum Decision that "they" referred to the prosecution, Ramon stated in his brief that it refers to the defense, and the government implies in its brief that it refers to the prosecution. The Court of Criminal Appeals's opinion assumed that "they" referred to the prosecution.

[3] Though the court initially denied her request to testify, the prosecutor later renewed her request because she still believed that the jury had a false impression.

04-02-00219-CR, 2003 WL 22082410, at *1 (Tex. App.—San Antonio Sep. 10, 2003, pet. granted) (not designated for publication). The Texas Court of Criminal Appeals granted review to determine whether the court of appeals erred in its finding that there was no harmful error stemming from the prosecutor's actions. *Ramon v. State*, 159 S.W.3d 927, 928 (Tex. Crim. App. 2004). The Court of Criminal Appeals agreed with Ramon that there was some improper prosecutorial behavior but ruled that the misconduct was not prejudicial:

> We agree that the prosecutor's behavior was improper.
>
> . . .
>
> However, as the court of appeals below found, the subject matter of the prosecutor's testimony in this case was not of great consequence to the outcome of the case.
>
> . . . [T]he trial court's instruction to disregard was sufficient to cure the error in allowing the prosecutor to testify in this case. The prosecutor's reference to Dr. Hainley during closing argument could be interpreted as a reference to Dr. Hainley's testimony when he was recalled, rather than to the prosecutor's own testimony. It is a well-accepted principle that the admission of improper evidence will not require reversal if the same facts are proved by "other and proper" testimony.
>
> Finally, [we consider] the likelihood that appellant would have been convicted absent the misconduct. The evidence against appellant included eyewitness identification placing him at the scene of the crime. . . .
>
> DNA evidence placed appellant's sperm on one of the victim's bed sheets, and his palm prints were found on the victim's headboard. . . . In this case, the fact that appellant's sperm was present on the victim's sheets was sufficient to place him at the scene, supporting the eyewitness' [sic] statement.
>
> Given the strength of the evidence against appellant, the court's instruction to the jury to disregard the prosecutor's testimony, and the tangential nature of that testimony, we do not

4

find an abuse of discretion in the trial court's failure to declare a mistrial. . . .

*Id*. at 931–32. The Court of Criminal Appeals then ruled that the trial court's failure to declare a mistrial was not an abuse of discretion and affirmed the court of appeals's ruling. *Id*. at 932.

On March 15, 2006, Ramon filed a state application for writ of habeas corpus that was denied without order. Ramon filed a federal writ petition in the United States District Court for the Western District of Texas. The court denied the petition, holding that the Texas Court of Criminal Appeals did not contravene clearly established federal law as determined by the Supreme Court. The court stated, *inter alia*, that "whether presented as an instance of prosecutorial misconduct or trial court error in admitting evidence . . . Ramon was not denied due process" based on the court's limited standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. The court cited three reasons for its conclusion. First, the court explained that "juries are presumed to follow their instructions" and thus did in fact disregard the prosecutor's testimony as instructed. Second, the court agreed with the Texas Court of Criminal Appeals that "the evidence against Ramon [was] sufficient to assure Cavazos' testimony did not impact the jury's verdict or result in his conviction." Finally, the court stated that Cavazos's claim—that she was primarily interested in the DNA so she could rebut Ramon's claim that he was in his home at the time—was accurate, as the defense had argued that Ramon was at home "in his bed asleep with his girlfriend" at the time of the assault.

Ramon timely filed a notice of appeal and applied for a certificate of appealability ("COA") on the issues of actual innocence, denial of due process, and ineffective assistance of counsel. The district court denied the COA, but this

5

court granted it on the issue of "whether the prosecutor's conduct rendered Ramon's trial fundamentally unfair."

## II. STANDARD OF REVIEW

A federal district court must review an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" under AEDPA. 28 U.S.C. § 2254. Under the relevant AEDPA provision, the application will not be granted:

> [W]ith respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "AEDPA mandates a high degree of deference to state court rulings on both pure questions of law and mixed questions of law and fact." *Geiger v. Cain*, 540 F.3d 303, 307 (5th Cir. 2008) (citing *Hill v. Johnson*, 210 F.3d 481, 484–85 (5th Cir. 2000)).

When reviewing a district court's decision under AEDPA, this court "review[s] the district court's findings of fact for clear error and review[s] its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." *Beazley v. Johnson*, 242 F.3d 248, 255 (5th Cir. 2001).

## III. DISCUSSION

Under AEDPA, "our task is to determine *de novo* whether the district court was correct in finding that the state court's treatment of [Ramon's] prosecutorial misconduct claim was [not] contrary to clearly established federal law as determined by the United States Supreme Court." *See Geiger*, 540 F.3d at 308

6

(citing 28 U.S.C. § 2254(d)(1)). For purposes of determining whether there has been prosecutorial misconduct, the Supreme Court has stated that "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). A trial is fundamentally unfair "if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Riddle v. Cockrell* , 288 F.3d 713, 720 (5th Cir. 2002) (internal quotation marks omitted). We first consider Cavazos's testimony, then her closing remark.

## A.    Cavazos's Testimony

"It is an almost universally frowned upon practice for a prosecutor to testify at a trial of the case he is prosecuting." *Riddle*, 288 F.3d at 721. Indeed, such testimony "should only be permitted in extraordinary circumstances or for compelling reasons." *Id.* (citing *United States v. Birdman*, 602 F.2d 547, 553 (3d Cir. 1979)). In *Riddle*, a federal district court denied the petition for writ of habeas corpus of a state prisoner convicted of capital murder. *Id.* at 714–16. During Riddle's trial, the prosecutor took the stand in order to refute Riddle's testimony that the prosecutor had claimed "he was going to do his damnest [sic] to make sure [Riddle] got the death penalty." *Id.* at 715. In reviewing the district court's denial of Riddle's petition, this court preliminarily stated that it did not "condone" the prosecutor's actions and that it was "clearly preferable for the prosecutor to step down after his testimony." *Id.* at 721. Despite this disapproval of the prosecutor's conduct, this court ultimately ruled that the prosecutor's testimony had not "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 720–21. This court distinguished the Eleventh Circuit's ruling in *Walker v. Davis* that a prosecutor's testimony was "so egregious and prejudicial to a fair trial as to undermine the

7

confidence in the outcome." 840 F.2d 834, 839 (11th Cir. 1988) (internal quotation marks omitted). In that case, the prosecutor had stressed his twenty-one years of public service and "directly addressed the defendant's guilt or innocence through testifying about the defendant's confession." *Riddle*, 288 F.3d at 721 (describing *Walker*, 840 F.2d at 836). The court thus ruled that Riddle had "failed to show the requisite substantial effect on his right to fair trial" because the prosecutor had not made similar claims and because there was strong evidence against Riddle. *Id.*

In the present case, the state court did not contravene clearly established federal law as determined by the Supreme Court when it ruled that Cavazos's testimony was not prejudicial prosecutorial misconduct. Preliminarily, we again stress that we do not "condone" Cavazos's actions. As the *Riddle* court stated, it was "highly unusual and potentially prejudicial" for her to testify and "play a dual role as advocate and witness." *Id.* Nonetheless, Ramon's substantial rights were not prejudiced. Unlike in *Walker*, Cavazos neither directly addressed defendant's guilt or innocence, nor did she focus upon her own years of prosecutorial experience. Instead, she testified as to her request for Ramon's blood sample, a sample that incriminated Ramon regardless of the prosecution's specific decisions about what other samples it chose to present. Furthermore, the semen stains, palm prints, eyewitness testimony of Ammann, and McGraw's statement are all compelling evidence against Ramon. Hence, Cavazos's testimony did not create a "reasonable probability that the verdict might have been different had the trial been properly conducted" and thereby "infect" the trial with unfairness so as to "make the resulting conviction a denial of due process."

Ramon also argues that the district court "makes great hay" of the judge's instruction to disregard the prosecutor's testimony. In fact, the district court correctly reasoned that the jury disregarded Cavazos's testimony because "juries

8

are presumed to follow their instructions." *Zafiro v. United States*, 506 U.S. 534, 540 (1993). This court "presume[s] that such instructions are followed unless there is an overwhelming probability that the jury will be unable to follow the instruction and there is a strong probability that the effect of the improper statement is devastating." *United States v. Gallardo-Trapero*, 185 F.3d 307, 321 (5th Cir. 1999) (internal alterations and quotation marks omitted). Ramon points to nothing that would raise even the faintest probability that the jury was unable to follow the court's instruction to disregard Cavazos's testimony.

Thus, the state court's determination regarding Cavazos's testimony did not involve an unreasonable application of clearly established federal law.

## B. Cavazos's Closing Remark

As to Cavazos's closing statement, the Supreme Court has stated that "if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." *United States v. Young*, 470 U.S. 1, 12–13 (1985). This court has recognized this rule on multiple occasions. *See, e.g.*, *United States v. Ramirez-Velasquez*, 322 F.3d 868, 874 (5th Cir. 2003) ("The prosecutor's response will not necessarily warrant reversal, so long as it is designed merely to right the scale." (internal quotation marks omitted)); *United States v. Vaccaro*, 115 F.3d 1211, 1216 (5th Cir. 1997) ("[W]e may consider the invitation in judging whether the prosecutor's invited response unfairly prejudiced the defendants." (internal quotation marks omitted)); *United States v. Tullos*, 868 F.2d 689, 697 (5th Cir. 1989) ("The defendant's comments clearly invited the prosecutor's reply.").

In the present case, the state court did not unreasonably apply clearly established federal law when it ruled that the closing remark did not constitute prejudicial prosecutorial misconduct. Ramon's attorney stated in his closing remarks: "Chad Hainley was concerned. That's why he called. We've got other—we've got other semen. Is this a case of economics trying to win over

truth and justice?" During her closing argument, Cavazos remarked: "Chad Hainley called me to see if we were going to submit any other samples, not because he was concerned." Defense counsel's comment appears to have "invited" Cavazos to "right the scale" regarding the DNA evidence. The Court of Criminal Appeals thereby did not unreasonably apply clearly established law when it determined that Cavazos's "reference to Dr. Hainley during closing argument could be interpreted as a reference to Dr. Hainley's testimony when he was recalled, rather than to the prosecutor's own testimony."

Ramon points us to *United States v. Gracia*, a case in which this court ruled that a prosecutor's closing remark was an error constituting prejudicial misconduct. 522 F.3d 597, 600 (5th Cir. 2008) (prosecutor admonished the jurors that an acquittal of defendant would mean that they believed the agents "got out of bed" on the day they arrested Gracia and decided this was "the day that [they] were going to start [a] conspiracy to wrongfully convict Mr. Gracia."). However, *Gracia* was decided on direct appeal, not on a petition for federal habeas relief under AEDPA's narrower standard of review. Furthermore, even if we were to consider Cavazos's misconduct directly, as opposed to through the AEDPA lens, her actions would not rise to the level of prejudicial prosecutorial misconduct. Other cases in this court's direct appeal jurisprudence are illustrative of prosecutors' comments that either were not improper or were improper but not prejudicial. *See, e.g.*, *United States v. Martinez-Larraga*, 517 F.3d 258, 265 (5th Cir. 2008) ("Why would [the agents] get up here and try to make up lies or make up suggestions and so forth? They were there. They're telling you what they saw, so it's a question whether you believe these agents or not."); *United States v. Fields*, 483 F.3d 313, 360 (5th Cir. 2007) ("[A] lot of people have fallen for that con [referring to the defendant]."); *Ramirez-Velasquez*, 322 F.3d at 873 ("Do the agents have any reason? Do they have a reason to throw away their career, to say, . . . I'm going to give up my twenty-year law enforcement career, because I

really care that two people get convicted.  They're there to testify to the truth. They enforce the laws and they're going to honor it. And they're going to say, these are the facts."); *Gallardo-Trapero*, 185 F.3d at 319 ("[D]o you think that agents for the federal government and a prosecutor for the federal government, for the United States of America, are going to risk their career and get on the stand and . . . commit perjury and risk their career.  It's not going to happen, ladies and gentlemen.").

The state court's adjudication therefore did not unreasonably apply clearly established federal law when it ruled that the prosecutor's statement in her closing argument was not prejudicial.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.