UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 6, 2008

Charles R. Fulbruge III
Clerk

No. 06-31296

KELLY GEIGER,

Petitioner-Appellee,

v.

BURL CAIN, Warden, Louisiana State Penitentiary,

Respondent-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before GARWOOD, CLEMENT and ELROD, Circuit Judges.

JENNIFER W. ELROD, Circuit Judge:

Appellee Kelly Geiger filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254, asserting four grounds for post-conviction relief. The district court granted Geiger's petition on grounds of prosecutorial misconduct and ineffective assistance of counsel. Respondent appeals and we reverse.

## I. BACKGROUND

In June 2002, following a jury trial in Louisiana state court, Kelly Geiger was found guilty of second degree murder; he was thereafter sentenced to life in prison. The facts underlying his conviction, as adduced at trial, are as follows.

On October 9, 2001, Geiger and five acquaintances, Jason Gross, Gerard Gross, Lester Panter, Sarah Lenard, and Clifford Gaines, were gathered under the Governor Nicholls Street Wharf in New Orleans, Louisiana, socializing and drinking whiskey. At Geiger's trial, Jason Gross ("Gross") testified that at some point during the get-together, Geiger, Gross and Panter walked to the French

Quarter to purchase more alcohol. On their walk back to the wharf, the three encountered a woman, hereafter referred to as "the victim," who, after some conversation, agreed to accompany Geiger, Gross and Panter back to the wharf.

Upon returning to the wharf, the group gathered upon a large concrete slab and continued drinking. Gross eventually "passed out" from inebriation. Gross testified that he was awakened by the sound of Geiger and Panter beating the victim with a stick. Thereafter, Geiger and Panter tossed the victim off the concrete slab, then followed her down and began kicking her. Geiger then allegedly demanded Gross' participation, at which time Gross complied by disposing of the victim's clothes in the nearby river. Next, Geiger and Panter, according to Gross, crushed the victim's head with large boulders, apparently to ensure her death. The two then threw her body into the river. Shortly thereafter, Geiger suggested to the others in the group—some of whom were asleep during the violence—that they leave the scene "because they [had] just killed a girl."

While leaving the wharf premises the group encountered Michael Carmouche, a New Orleans police officer, who issued all six in the group citations for trespassing. Officer Carmouche did not at the time realize what had transpired moments prior to his arrival.

Sometime after Officer Carmouche sent the group on its way, Lenard left the group, found a police officer and reported the killing. Gross was later questioned by police and eventually charged with being an accessory after the fact to murder, a charge the State later dropped when Gross agreed to testify against Geiger.

Among the State's eight witnesses at Geiger's trial were Jason Gross; Officer Ryan Maher, the police officer to whom Lenard reported the killing; and Officer Carmouche. Importantly, although she reported the crime to the police, Lenard did not testify at trial; she did not answer the subpoena mandating her appearance. As the district court noted in its opinion and order granting

2

Geiger's petition, Gross was the only witness able to identify Geiger as the victim's killer. No defense evidence was presented.

A jury found Geiger guilty of second degree murder. On July 10, 2002, Geiger was sentenced to life imprisonment. On July 2, 2003, the Louisiana Fourth Circuit Court of Appeal denied Geiger's direct appeal. On November 25, 2003, Geiger filed a motion for post-conviction relief in state district court, which was denied. The Louisiana Fourth Circuit Court of Appeal denied Geiger's request for a supervisory writ on February 6, 2004. The Louisiana Supreme Court did the same on January 14, 2005.

Geiger next filed his § 2254 habeas corpus petition in federal district court on March 25, 2005, asserting four grounds for post-conviction relief. First, Geiger claimed that the evidence presented at trial was insufficient to sustain his conviction. Second, Geiger claimed his indictment was constitutionally defective. Third, he claimed that the prosecutor made inappropriate remarks throughout his trial that were so prejudicial as to render his trial fundamentally unfair. Specifically, Geiger argued that the State insinuated several times before the jury that, had it been able to secure Sarah Lenard's testimony, that testimony would have corroborated that of the State's key witness, Jason Gross. Fourth, Geiger claimed he was denied effective assistance of counsel in violation of his Sixth Amendment rights because his trial counsel failed to move for a mistrial based on the prosecution's allegedly inappropriate remarks, and because counsel failed to request an instruction directing the jury to consider the uncorroborated accomplice testimony of Gross with caution.

The district court concluded that Geiger exhausted his state remedies by presenting his claims to the appropriate Louisiana courts, and that his federal petition was timely. It then granted Geiger habeas relief on prosecutorial misconduct and ineffective assistance grounds.

## II. DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court may not grant § 2254 habeas relief on any ground previously disposed of on the merits by a state court unless the state decision "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The AEDPA mandates a high degree of deference to state court rulings on both pure questions of law and mixed questions of law and fact. See generally Hill v. Johnson, 210 F.3d 481, 484-85 (5th Cir. 2000). Further, we "review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." Beazley v. Johnson, 242 F.3d 248, 255 (5th Cir. 2001) (citation and internal quotation marks omitted).

### A. The Prosecutor's Allegedly Improper Remarks

The district court found that Geiger was entitled to habeas relief based on remarks made by the prosecutor during trial; remarks the district court concluded were so prejudicial as to render Geiger's trial fundamentally unfair. During voir dire, the following exchange took place before the jury:

> Prosecutor: I do want to talk to you about lay witnesses. Jason Gross is the State's only eyewitness that we have access to. He's about—
>
> Defense: I'm going to object. I think we're getting a little bit into the facts of the case more than is proper in voir dire.
>
> Court: Ah, as to that one comment, I would overrule the objection, note the objection for the Defense.

During opening argument, the following occurred:

> Prosecutor: Let me tell you what you're going to hear. You're going to hear that on October 9th around 12:00 p.m., someone named

4

Jason Gross, whom you will hear from, and someone named Sarah Lenard, whom you will not hear from because I can't get my hands on her—

Defense: Objection, your honor. This is completely—

Court: I couldn't hear what you said. Please, ma'am, I apologize. Because I could not what?

Prosecutor: Cause I can't get my hands on her. Cause I can't produce her. It's a fact.

Court: You're—you're intending to present evidence that you cannot reach her?

Prosecutor: Oh, yes.

Court: Then I would overrule that as to what the lady intends to offer.

Defense: Based on the fact—

Court: I'm not saying that's correct or not.

The following occurred during closing argument:

Prosecutor: Do I wish I had Sarah Lenard to corroborate Jason Gross' account of what happened? You better believe I do. Did I take the necessary actions against her? You better believe I have.

Defense: I'm going to object to this. Arguing—

Court: Yeah, I would sustain that on the—on the representation that she would corroborate. I'm not here to say that she would or wouldn't.

The district court concluded that these remarks warranted habeas relief because they "jeopardized Mr. Geiger's right to be tried solely on the evidence presented at trial," which amounted to "prejudicial error." According to the district court, the prosecutor inappropriately suggested that Lenard would have

corroborated Gross' testimony, which is significant given that Gross was the only State witness able to identify Geiger as a perpetrator.

Pursuant to the AEDPA, our task is to determine de novo whether the district court was correct in finding that the state court's treatment of Geiger's prosecutorial misconduct claim was contrary to clearly established federal law as determined by the United States Supreme Court. See § 2254(d)(1). Under this standard, we will affirm the district court only if the prosecutor's remarks "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). To satisfy this requirement below, Geiger was required to show "that the [prosecutor's] misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988).

Respondent argues on appeal that the prosecution's statements as to Lenard's unavailability were not improper. Even assuming arguendo that the prosecution's remarks were improper, they do not warrant habeas relief, as they were not persistent or pronounced, and the admissible evidence of guilt was not insubstantial.

Gross witnessed what happened; Geiger does not dispute this. Gross testified that he saw Geiger and Panter kill the victim. Notwithstanding the suspect nature of accomplice testimony, the jury was entitled to believe Gross, and it was not unreasonable in doing so. In addition, although no other State witness could with credible certainty identify Geiger specifically as one of the two killers, the State did elicit from Officer Carmouche testimony corroborating—albeit not overwhelmingly—Gross' narrative. According to Officer Carmouche, as he approached the group to cite them for trespassing, he observed Geiger and Panter, the very two people Gross inculpated, washing their hands in the river. The jury could have reasonably viewed this as confirming

Gross' testimony that Geiger and Panter, after disposing of the victim's body, washed the victim's blood from their hands and arms in the river.

A prosecutor's case need not be perfect in order to persuade reasonable jurors. Even assuming that the prosecution's remarks were intended to, and did, have the effect of suggesting to the jury that Lenard would have corroborated Gross' testimony, the jury nevertheless could have reasonably found Geiger guilty absent the allegedly improper statements. Thus, Geiger did not establish below that "the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks," id., and therefore Geiger was not denied due process.

## B. Ineffective Assistance of Counsel

The district court also found, as an independent basis for habeas relief, that Geiger suffered ineffective assistance of counsel in violation of his Sixth Amendment rights because counsel failed to move for a mistrial based on the aforementioned prosecutorial misconduct, and because counsel failed to request from the trial court a "great caution instruction" with regard to Gross' accomplice testimony.

A state court's adjudication of an ineffective assistance claim will not be disturbed in the habeas context unless it represents an "unreasonable application of[] clearly established Federal law." § 2254(d)(1). The Sixth Amendment guarantees the effective assistance of counsel; this is clearly established federal law. Strickland v. Washington, 466 U.S. 668, 685-86 (1984).

A party claiming ineffective assistance must show that: (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) he suffered prejudice as a result. Id. at 687-88. To prove prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

7

With regard to the first argument, the district court concluded with little explanation that counsel's failure to move for a mistrial "constituted deficient performance, which unduly prejudiced the petitioner." We disagree.

As we have noted before, a "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (quoting United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002)); see also Jones, 287 F.3d at 331 ("'Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed.'" (quoting Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999)); Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").

It is oft-recognized that the decision not to seek a mistral is frequently a strategic one. See, e.g., Ward v. Dretke, 420 F.3d 479, 491 (5th Cir. 2005) ("In deciding whether to seek a mistrial, [counsel] was required to balance the harm caused by the prosecutor's improper question against the legitimate possibility that a new trial would present less propitious prospects for his client. [Counsel] opted to cast his lot with a jury . . . rather than risk retrying the case with Love and Grant appearing as hostile witnesses."); see also United States v. Moran, 393 F.3d 1, 10 (1st Cir. 2004) ("There are both tactical and strategic reasons why a party might seek a judgment of acquittal but not a new trial (for example, a fear that the prosecution will learn from its mistakes and put in a more persuasive case the second time around . . . or a fear that a shift in judges will lead to a stiffer sentence)."). The possibility that counsel's decision here was an informed one is not merely theoretical; as evinced by the prosecutor's comments discussed above, it is likely that the State would have done its best to "get [its] hands on" Lenard for purposes of the second trial in order to buttress Gross' testimony.

Thus, to the extent the district court assumed without discussion that counsel's decision was nonstrategic, it erred.

In addition, had counsel moved for a mistrial, we find no basis to conclude that the trial court would have granted it, or would have reversibly erred by refusing it. Counsel objected each time the State alluded to the potential testimony of Lenard, and the trial court overruled all but one of those objections. Thus, we cannot agree that, absent counsel's alleged error, "there is a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also United States v. Rosalez-Orozco, 8 F.3d 198, 199 (5th Cir. 1993) ("In order to establish prejudice, Rosalez must show that [there was] a reasonable probability that had counsel moved for a judgment of acquittal, the motion would have been granted . . . ."); Burston v. Caldwell, 506 F.2d 24, 28 (5th Cir. 1975) ("The failure of petitioner's counsel to move for a directed verdict did not render [counsel's] assistance ineffective where there was . . . sufficient evidence of guilt to support a guilty verdict and no reason to believe that such a motion would be granted.").

With regard to counsel's failure to request an instruction urging the jury to weigh accomplice testimony cautiously, the district court concluded that, had counsel requested the instruction, there is "more than a reasonable likelihood that the jury would have reached a different decision as to petitioner's guilt."

In Louisiana, "[w]here the state's case relies upon the uncorroborated testimony of an accomplice, the trial judge should instruct the jury to treat such testimony with caution . . . ." State v. Schaffner, 398 So. 2d 1032, 1035 (La. 1981). However, "[w]here there is material corroboration of the accomplice's testimony, the cautionary accomplice instruction is not required." Id. The parties argue over whether the material corroboration exception applies here. We do not reach the issue, for even assuming arguendo deficient performance, we fail to see how counsel's failure to request the cautionary instruction gives

rise to a reasonable probability that the result of Geiger's trial would have been different.

The instruction would have reminded the jury that Gross had a strong personal interest in assisting the prosecution. But we do not deem the instruction so crucial such that its omission necessarily undermines confidence in the outcome of Geiger's trial. Indeed, a review of the trial transcript reveals that on cross-examination counsel elicited from Gross an admission that he "made a deal" with the government. Further, when defense counsel asked Gross "You understand that if you testify properly you're going to walk out of here, and you're not going to be charged with anything," Gross answered "yes." The jury was undoubtably cognizant of facts that could have weakened Gross' credibility. As such, under the governing AEDPA principles, the district court erred in concluding that the Louisiana courts misapplied the U.S. Supreme Court's Sixth Amendment precedent by rejecting Geiger's claim of ineffective assistance of counsel. See § 2254(d)(1).

## III. CONCLUSION

We REVERSE the judgment of the district court and DISMISS Geiger's § 2254 petition.