United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2009

Charles R. Fulbruge III
Clerk

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 08-31233

DAVID LEFEVRE,

Petitioner–Appellee,

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before GARWOOD, OWEN, and SOUTHWICK, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

The State appeals a district court judgment granting David Lefevre's petition for writ of habeas corpus. The district court found that Lefevre's right to self-representation was violated because the leg shackles the court required him to wear during trial prevented him from attending bench conferences and moving freely about the courtroom during trial. The State argues that the shackles did not prevent Lefevre from preserving actual control of his case or destroy the jury's perception that Lefevre was representing himself, and therefore Lefevre's shackling did not violate his right to self-representation. We hold that Lefevre's shackling did not violate his right to self-representation,

reverse the district court's judgment, and deny Lefevre's petition for writ of habeas corpus.

## I

The District Attorney of Jefferson Parish, Louisiana, charged Lefevre with armed robbery, second-degree kidnapping, and aggravated burglary. Lefevre chose to represent himself at trial. The district judge allowed him to do so, provided Lefevre accepted his previously appointed lawyer, John E. Benz, as standby counsel. On the morning of trial, Lefevre moved to have his leg shackles removed. The trial court denied Lefevre's motion, ordering that his handcuffs be removed but not his leg shackles. While the court did not offer any reason why it refused to remove Lefevre's leg shackles, the judge attested in a later affidavit that "Lefevre was maintained in leg shackles during his trial due to his multiple prior attempts to escape from custody," and that he had been advised by "jail transporting personnel that Lefevre was going to try and escape from the courtroom." Lefevre does not contest in this appeal the trial court's decision to shackle him.

After denying Lefevre's motion to remove his leg shackles, the trial court proceeded to select the jury. Upon Lefevre's request, Benz handled jury selection. The prosecutor and Lefevre then gave their opening statements, and the prosecutor examined, and Lefevre cross-examined, the first two witnesses. Lefevre performed these tasks while sitting at or standing behind counsel table so that jurors could not observe that he was wearing leg shackles.

During the State's examination of the second witness at trial, Lefevre objected because the witness was providing rambling answers beyond the scope of the prosecutor's questions. Benz requested to approach the bench, and Benz and one of the prosecutors proceeded to the bench to discuss the matter with the trial judge while Lefevre remained at counsel table. Benz asked the court to direct the witness to respond to the questions, and the court did so.

Following opening remarks and the examination of the first two witnesses, the trial court, outside of the presence of the jury, recommended taking testimony in connection with a pending motion to suppress. After denying the motion, the judge asked Lefevre if he wanted to reconsider representing himself. Lefevre replied that he did not want to give up his right to speak totally, and he inquired whether Benz could "play a bigger role." The court responded, "[T]hat's between you and Mr. Benz," and Benz stated, "I can only advise him."

The jury returned to the courtroom, and the State called its third witness. During her testimony, the witness made an in-court identification of Lefevre. Lefevre objected, and Benz requested to approach the bench. Following Benz's argument and the prosecutor's response, the court denied Lefevre's objection.

During the testimony of a State witness on the second day of trial, Lefevre objected. Benz requested a bench conference and stated that the objection was based on the fact that the witness was about to testify that Lefevre had committed the crime of simple escape. The court overruled the objection.

The trial court convicted Lefevre of all counts, and the judge imposed a sentence in excess of 200 years' imprisonment. After appeal to the Louisiana Fifth Circuit and the Louisiana Supreme Court, Lefevre's sentence was reduced to 99 years.[1]

Lefevre then filed an application for post-conviction relief in state court. He raised the same claims he later raised in his § 2254 petition: (1) ineffective assistance of appellate counsel; (2) invalid waiver of the right to counsel under the Sixth and Fourteenth Amendments; (3) denial of the right to counsel at critical stages of trial when Lefevre was excluded from bench conferences; (4) denial of the right to self-representation by his exclusion from bench conferences; (5) denial of the due process right to be present at all critical stages of trial; and

---

[1] *State v. Lefeure*, 831 So. 2d 398, 402 (La. Ct. App. 2002); *State ex rel. Lefevre v. State*, 855 So. 2d 291 (La. 2003).

(6) denial of due process by being compelled to wear shackles when representing himself. The state district court rejected Lefevre's first and sixth claims on the merits and denied claims 2 through 5 as successive under article 930.4(E) of the Louisiana Code of Criminal Procedure for failure to raise them in a previous post-conviction application. Lefevre, however, had not filed a previous post-conviction application. The state appellate court and the Louisiana Supreme Court denied review. The Louisiana Supreme Court's denial ended the state post-conviction process.

Lefevre then filed a § 2254 petition in federal court, raising the same claims as his state application for post-conviction relief. The magistrate judge appointed counsel to represent Lefevre and held an evidentiary hearing. Lefevre argued that the shackles prevented him from participating in bench conferences because he could not approach the bench without exposing them to the jury, and he did not think he would be able to step up on the platform on which the bench was located with his ankles restrained. Three jurors testified at the evidentiary hearing that they noticed that Lefevre never moved from behind the table while the prosecutors moved at will throughout the courtroom. One juror testified that she thought Lefevre was not allowed to move because he was a prisoner and might try to escape. Another juror noticed that the lawyers approached the bench, but Lefevre did not go with them. She found this unusual because "that's what you normally see in a courtroom, movement" by the attorneys. "And in his case, he was representing himself. If he wanted to move around, I would have expected him to move around."

Following the evidentiary hearing and briefing, the magistrate judge found a violation of Lefevre's Sixth Amendment right to self-representation and recommended the grant of habeas relief. The district court adopted the magistrate's Report and Recommendation and ordered the State to retry Lefevre or release him within 120 days. The State appeals from this judgment. This

4

court has "undeniable appellate jurisdiction over the government's appeal of the grant of habeas relief."[2]

## II

In a habeas appeal, we review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court.[3] Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court must defer to a state court's decision with respect to any claim that was adjudicated on the merits unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[4]

However, the deferential AEDPA standard does not apply when the petitioner fairly presents his claim to the state court, the state court does not adjudicate the claim on the merits, and the claim is not procedurally defaulted; the federal court then conducts a de novo review.[5] In this case, the district court determined that the state courts did not adjudicate Lefevre's claims on the merits because the state court denied Lefevre's claims regarding a violation of his right to self-representation as a successive petition.[6] The court also concluded that there was

---

[2] *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 512-13 (5th Cir. 2006).

[3] *Geiger v. Cain*, 540 F.3d 303, 307 (5th Cir. 2008).

[4] 28 U.S.C. § 2254(d).

[5] *Powell v. Quarterman*, 536 F.3d 325, 343 (5th Cir. 2008).

[6] *See* La. Code Crim. Proc. Ann. art. 930.4(E)-(F) (providing that "[a] successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application," and the court will only consider the merits of the claim if it finds

not an adequate procedural bar because Lefevre had not filed a prior application and "'similar claims,' i.e., claims which are the subject matter of a petitioner's first post-conviction application, are not regularly deemed to be barred as successive." Because the state court did not adjudicate Lefevre's claim on the merits, and the claim was not properly dismissed pursuant to an adequate procedural bar, the district court conducted a de novo review of Lefevre's claim that his right to self-representation had been violated.

### III

As established in *Faretta v. California*, a defendant has a Sixth Amendment right to self-representation.[7] A "*pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial."[8] However, "a trial court may appoint 'standby counsel' to assist the *pro se* defendant in his defense."[9] In *McKaskle v. Wiggins*, the Court determined that there were two limits on the participation of standby counsel: "First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. . . . Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself."[10] Because "the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome

---

that the failure to include the claim in the prior application was excusable).

[7] *Faretta v. California*, 422 U.S. 806, 836 (1975). The magistrate judge found that Lefevre validly waived his right to counsel, and the issue is not raised by this appeal.

[8] *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984).

[9] *Id.* at 170.

[10] *Id.* at 178.

unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless."[11]  Lefevre argues that his Sixth Amendment right to self-representation was violated because (1) his shackling prevented his attendance at bench conferences, and thereby denied him the right to preserve actual control over his case, and (2) his shackling destroyed the jury's perception that he was representing himself by requiring him to remain behind counsel table while the prosecutors were able to move freely about the courtroom.

## IV

We first consider Lefevre's argument that his shackling prevented his attendance at bench conferences during his trial and thereby violated his right to preserve actual control over the case he chose to present to the jury. A defendant's *Faretta* rights are not infringed when standby counsel assists the defendant in routine issues of procedure or courtroom protocol because doing so does not interfere with the defendant's actual control of the case.[12] However, "[i]f standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance, the *Faretta* right is eroded."[13]

The magistrate judge found that while the first bench conference concerned "housekeeping" matters, the second and third bench conferences concerned matters of importance. On appeal, the State does not contest that these two conferences concerned matters of importance; instead, the State argues that Lefevre acquiesced to Benz's participation in the bench conferences

---

[11] *Id.* at 177 n.8.

[12] *Id.* at 183.

[13] *Id.* at 178.

and waived his right to self-representation during the conferences by failing to object. Lefevre, however, argues that his shackling rendered his exclusion from the bench conferences involuntary because he had a right to attend the bench conferences as part of his right to self-representation, but he also had a due process right to be tried without visible restraints, and he did not waive either right. Lefevre contends that he is not arguing that standby counsel exceeded his role, but that he was barred from playing his own role due to the judge's order that he remain shackled, and therefore whether he consented to Benz's participation on his behalf is "beside the point."

In support of this argument, Lefevre relies on Judge Kozinski's concurrence in *Frantz v. Hazey*.[14] In *Frantz*, standby counsel, and not the pro se defendant, participated in a chambers conference that was held in response to a jury question during deliberations.[15] The Ninth Circuit determined that the pro se defendant's rights were violated if the defendant did not consent to his exclusion from the conference, regardless of whether standby counsel accurately portrayed the defendant's position.[16] The court remanded for an evidentiary hearing to determine, in part, whether the defendant was "accurately informed of the purpose of the conference and given the opportunity to appear but declined to do so."[17] In his concurrence, Judge Kozinski noted that the defendant was being held in custody elsewhere and was not in court at the time the jury question arose, and therefore most likely did not have a choice about whether to attend the conference because "if the judge does not order [the defendant] to

---

[14] 533 F.3d 724, 746 (9th Cir. 2008) (en banc) (Kozinski, J., concurring).

[15] *Id.* at 731.

[16] *Id.* at 743-44.

[17] *Id.* at 745.

appear, the prisoner remains in his cell, no matter how badly he may want to go before the judge."[18] Judge Kozinski continued,

> If [the defendant] was not allowed to attend the conference and speak for himself, what else *could* he do except speak through [standby counsel]? [The defendant's] decision to do so, rather than refuse to provide any defense input whatsoever, can hardly be construed as waiving his right under *Faretta* and *McKaskle* to appear and speak for himself.[19]

Lefevre argues that the shackles prevented him from attending the bench conferences and therefore, like the defendant in *Frantz*, he did not have a choice of whether to participate. However, *Frantz* is distinguishable. In *Frantz*, the chambers conference took place during jury deliberations while the defendant was in custody elsewhere. The defendant may not have even known that the conference was taking place, and, as he was not present, there was no way for him to object to his exclusion. Here, Lefevre was present at the time the bench conferences took place. While he had a right to be tried without visible restraints,[20] and while it may also be true that he was unable to step onto the bench platform because of the shackles, Lefevre knew that the bench conferences were occurring without his participation, and he did have the opportunity to object to Benz's participation in the conferences in his stead. Because Lefevre had the opportunity to object to his exclusion, his absence from the bench conferences was not involuntary.

---

[18] *Id.* at 746 (Kozinski, J., concurring).

[19] *Id.* at 746-47.

[20] *See Deck v. Missouri*, 544 U.S. 622, 629 (2005) ("[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial.").

As Lefevre's shackling did not make his absence from the bench conferences involuntary, we must then determine whether Lefevre waived his right of self-representation at the bench conferences by acquiescing to Benz's participation in his place. The magistrate judge found that "there [was] no need for this court to speculate as to whether Mr. Lefevre did or did not consent to standby counsel participating, in his stead, in the two bench conferences in issue" because Lefevre testified at the evidentiary hearing "that he did not consent to standby counsel taking his place at the conferences." However, a defendant can waive his *Faretta* rights, either by expressly requesting standby counsel's participation on a matter or by acquiescing in certain types of participation by counsel, even if the defendant insists that he is not waiving his *Faretta* rights.[21] In *McKaskle*, the Court noted that "[o]nce a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced."[22] *McKaskle* also requires that standby counsel's participation be "over the defendant's objection" in order to erode the defendant's *Faretta* rights.[23]

The magistrate judge found that there was no presumption that Lefevre, in the absence of an objection, waived his *Faretta* right to participate in the bench conferences in this situation, as Lefevre made opening and closing arguments to the jury, cross-examined witnesses, put on his own defense by examining a witness, and argued a motion outside of the presence of the jury. In reaching this conclusion, the magistrate relied on both the Ninth Circuit's

---

[21] *McKaskle v. Wiggins*, 465 U.S. 168, 182 (1984).

[22] *Id.* at 183.

[23] *Id.* at 178.

decision in *Frantz* and the Tenth Circuit's decision in *United States v. McDermott*.[24] However, key differences in those two decisions distinguish this case.

Both *Frantz* and *McDermott* held that a defendant had not waived his right to self-representation despite standby counsel's participation in conferences. As discussed above, the conference in *Frantz* occurred during jury deliberations, while the defendant was in custody elsewhere.[25] The court determined the defendant's failure to object to his exclusion from the conference was not fatal to his claim because "[w]hen standby counsel is appointed only to advise, the initial invocation of the right of self-representation is generally sufficient to establish that any participation by standby counsel other than for the routine matters mentioned in *McKaskle* is 'over the defendant's objection.'"[26] The defendant had no opportunity to object and may not have had a choice in whether to attend.[27] In *McDermott*, the court determined that the defendant had not given up control of his defense as a result of standby counsel's participation in sidebar conferences from which the defendant had been involuntarily excluded.[28] However, the defendant's involuntary exclusion from the conferences was because the court had ruled, over the defendant's objection, that the defendant would not be permitted to be present at bench conferences.[29]

---

[24] *United States v. McDermott*, 64 F.3d 1448 (10th Cir. 1995).

[25] *Frantz v. Hazey*, 533 F.3d 724, 744 (9th Cir. 2008) (en banc).

[26] *Id.*

[27] *Id.* (noting that the defendant "was in 'lock-up' during the conference, so it [was] particularly unlikely that implied consent [could] be inferred from the failure to object").

[28] *McDermott*, 64 F.3d at 1453.

[29] *Id.* at 1451.

Lefevre was in a different position. While Lefevre objected to his shackling and had a right to be tried without visible restraints, Lefevre never objected to Benz's participation in the bench conferences on his behalf, moved to approach the bench himself, or requested to have the jury removed to argue an objection. Unlike the trial court in *McDermott*, Lefevre's trial court never ruled that Lefevre could not participate in the bench conferences. Also, unlike the defendant in *Frantz*, Lefevre was present in the courtroom during the bench conferences and had an opportunity to object to his absence from the conferences, either at the time of the conference or after the jury was removed from the courtroom. Had Lefevre objected, the court might have accommodated his request to participate in the bench conferences by removing the jury from the courtroom and then allowing Lefevre to argue his objections.

In the absence of an objection, the trial court had no way of knowing that Lefevre was unhappy with Benz's participation in the bench conferences on his behalf. After the first bench conference, outside of the presence of the jury, the judge asked Lefevre if he wanted to reconsider representing himself. Lefevre replied that he did not want to give up his right to speak totally, and he inquired whether Benz could "play a bigger role." While Lefevre did not waive his right to self-representation during this conversation, he also did not indicate that he was unhappy with Benz's participation on his behalf, and in fact suggested that he would like Benz to play a larger role.

Lefevre has not provided any explanation for his failure to object. Therefore, for the reasons discussed above, we conclude that Lefevre acquiesced to Benz's participation in the bench conferences and thus waived his right to self-representation at the conferences.

## V

Lefevre also argues that his inability to move around the courtroom, whether to attend bench conferences, to question a witness, or to present closing

argument, also violated his right to self-representation by undermining the jury's perception of him as his own lawyer. Lefevre maintains that the accommodations other trial courts have made for pro se, shackled defendants demonstrate that the burdens imposed on Lefevre were unnecessary. Furthermore, Lefevre argues that he does not need to show that he was prejudiced by his inability to move freely because the right of self-representation is not subject to harmless error review.

In *McKaskle*, the Court held that "participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself."[30] The *McKaskle* Court determined that the defendant was "allowed to appear before the jury in the status of one defending himself" because the defendant "examined prospective jurors on voir dire, cross-examined the prosecution's witnesses, examined his own witnesses, made an opening statement for the defense," and "objected to the prosecutor's case at least as often as did [standby] counsel."[31] Like the defendant in *McKaskle*, Lefevre made the opening and closing arguments, cross-examined witnesses, examined his own witness, and made objections to the government's questions. The magistrate distinguished Lefevre's trial from that in *McKaskle* because Lefevre was compelled to perform these tasks while behind the counsel table, and the jury noticed that Lefevre remained behind the table while the prosecutors moved freely. However, Lefevre's inability to move around the courtroom, without additional facts, does not prove that Lefevre's shackling destroyed the jury's perception that he was representing himself.

Several cases have noted that the trial court can place restrictions on the prosecutors' movements during trial or make other accommodations to minimize

---

[30] *McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984).

[31] *Id.* at 186.

the risk of prejudice when a pro se defendant's movements are restricted due to shackling.[32] However, no court has gone so far as to require such accommodations. Furthermore, Lefevre did not request that the trial court make such accommodations in his case. Lefevre simply requested that his shackles be removed. Lefevre never objected to the prosecutors' ability to move freely, and he never requested that the jury be removed while he argued his objections or that the trial court use a different type of restraint, such as a stun belt.

While the right to self-representation is not subject to harmless error review, Lefevre still must demonstrate that his shackling destroyed the jury's perception that he was representing himself. Lefevre points out that each of the three jurors who testified at the evidentiary hearing "noticed his immobility," and that one juror inferred from Lefevre's immobility that he was a prisoner and hence an escape risk. However, this does not demonstrate that the jury did not perceive that Lefevre was representing himself. One juror's testimony clearly indicates that she was aware that Lefevre was representing himself: "And in his case, he was representing himself. If he wanted to move around, I would have expected him to move around." Nothing in the jurors' testimony indicates that they thought Lefevre was not representing himself as a result of his inability to move around the courtroom. Lefevre has presented no evidence that indicates

---

[32] *See Frantz v. Hazey*, 533 F.3d 724, 728 (9th Cir. 2008) (en banc) (stating that because the defendant was required to wear a leg brace and question witnesses from behind the defense table to minimize the risk of prejudice from the jury seeing his shackles, the trial court also required the prosecutor to examine witnesses and argue her case from behind counsel table); *United States v. Fields*, 483 F.3d 313, 357 (5th Cir. 2007) ("[T]he court took into account the special problems that physical restraints might pose under [the defendant's] decision to proceed *pro se*. It provided that both sides would remain seated before the jury. These steps ensured that the jury would neither see the stun belt nor surmise that [the defendant] was being treated differently from the prosecutors."); *Overton v. Mathes*, 425 F.3d 518, 520 (8th Cir. 2005) (noting that the trial judge "ordered that both [the pro se defendant] and prosecutor would conduct the trial from counsel tables, and the jury would be excused when a sidebar conference was needed, so as to not disadvantage [the defendant]").

that his inability to move freely around the courtroom destroyed the jury's perception that he was representing himself.

\* \* \*

Therefore, for the reasons discussed above, we hold that Lefevre's shackling did not violate his right to self-representation. We REVERSE the district court's judgment and DENY Lefevre's petition for writ of habeas corpus.