# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 19, 2010

No. 09-10003

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JAMES MICHAEL LONG

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before GARWOOD, WIENER, and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

The government charged James Michael Long with four counts of wilfully failing to file income tax returns, contrary to 26 U.S.C. § 7203. After a trial on the merits, the jury found Long guilty of all four counts. Long, represented on appeal by the Federal Public Defender's Office, appeals on two grounds. First, Long contends that the district court wrongfully denied him his right to represent himself. *See Faretta v. California*, 95 S. Ct. 2525, 2532 (1975). Second, he contends that the trial court erred in denying his *pro se* motion to dismiss based on the Speedy Trial Act. *See* 18 U.S.C. § 3161(c)(1). We affirm the district court for the reasons stated below.

No. 09-10003

## BACKGROUND

On April 1, 2008, the United States Attorney filed in United States District Court for the Northern District of Texas, Lubbock Division, a bill of information charging Long, allegedly a resident of Plainview, Texas (which is within that division), with four counts of violating 26 U.S.C. § 7203 by wilfully failing to file his federal income tax returns for each of the respective calendar years 2001 (count 1), 2002 (count 2), 2003 (count 3), and 2004 (count 4), although he had gross income in excess of approximately $65,000 in 2001, $80,000 in 2002, and $188,000 in 2003 and 2004 each. On the same day, a summons issued out of the Lubbock Division requiring Long to appear before the court on April 23, 2008 in reference to the information. On April 30, 2008, the government filed in the Lubbock Division a motion to issue an arrest warrant for Long, alleging that he had never appeared, and that the summons had not been served on him although "[n]umerous attempts have been made to locate the defendant, all to no avail." The same day Magistrate Judge Koenig of the Lubbock Division granted the motion and the arrest warrant was issued. On May 22, 2008, apparently in the Fort Worth Division of the Northern District of Texas, Long was arrested pursuant to the warrant and, after being brought before pretrial services in Fort Worth, he was brought before Magistrate Judge Bleil of the Fort Worth Division for his initial appearance on the April 1, 2008 bill of information. Also present was Assistant Federal Public Defender Fleury to represent Long.

At this hearing, Long, among other things, purported to fire Fleury, his public defender attorney. Judge Bleil then orally announced that Fleury was "appointed to represent Mr. Long, understanding, Mr. Fleury, that he doesn't wish to have your representation, I will consider this as stand-by representation." Judge Bleil further stated to Fleury "while you're in Fort Worth, you're [sic] responsibilities as stand-by counsel are to assist Mr. Long if he asks for your assistance in any way." However, Judge Bleil's May 22, 2008

2

No. 09-10003

written order appointing "the Federal Public Defender's Office of this District" as counsel for Long in the case makes no mention of being stand-by counsel or the like.

At the May 22 hearing Judge Bleil also orally ordered that Long "be detained pending further court proceedings finding that you are a risk of nonappearance and without any information concerning you due to your lack of cooperation with the probation officer" and that "you're a danger to others."[1]

Finally, Judge Bleil, at the May 22 hearing, orally directed Long be "transported to the Lubbock Division of the Northern District of Texas." Long was transferred to Lubbock, and on May 23, 2008, Assistant Federal Public Defender Kime-Goodwin entered her written appearance in the Lubbock Division in this case as representing Long.

Long's next appearance was on June 25, 2008, before Magistrate Judge Koenig in the Lubbock Division. Again, Long purported to fire his public defender attorney. In response, Judge Koenig set a *Faretta* hearing for August 25th, 2008 to determine whether Long knowingly and intelligently waived his right to counsel. At the August 25 hearing, Long refused to cooperate with Judge Koenig. For example, Long refused to answer any questions and requested a side bar conference with the judge. When the judge told Long that he needed to state his issues on the record, or talk to a pretrial services officer to determine whether he could be released on bond or his own recognizance or could retain counsel or could proceed *pro se*, Long refused and requested to postpone the hearing. The judge postponed the *Faretta* hearing for two days. At the August 27 hearing, Long again refused to cooperate. Judge Koenig once

---

[1] Judge Bleil's May 22, 2008 written order that Long be "detained pending further court proceedings" recites, *inter alia*, that "[t]he defendant [Long] refused to talk with probation officers about his background, employment, address or any pertinent information. . . . The defendant also was bizarre in his conduct, seemed irrational, and expressed a lack of recognition of any authority over him"

No. 09-10003

more postponed the hearing to September 3.  Again, Long refused to cooperate. At the September 3 hearing Judge Koenig had the bill of information read to Long, and ordered that a not guilty plea be entered for him.

Judge Koenig referred Long to District Judge Cummings for the *Faretta* hearing.  At a pretrial hearing on October 6, 2008, before trial commenced later that day, Long appeared with Assistant Federal Public Defendant Kime-Goodwin, who informed the court that she had requested the pretrial hearing because Long had said "he fired our office" and "essentially said that he wished to represent himself" and that she believed that accordingly he should "be advised of *Faretta* warnings by this court."  Thereafter, at the request of Long, attorney Kime-Goodwin moved for a continuance of the trial which Judge Cummings denied.  Judge Cummings accordingly then asked the defendant whether he wished to represent himself.  Long responded, "No, sir."  Long was thereafter tried and convicted on October 6, 2008.  At sentencing on December 30, 2008, Long's attorney Kime-Goodwin informed the court that Long wished to fire her.  Long attempted to speak up, but the district judge told him to wait his turn.  When the judge allowed Long to speak, Long stated only, "For the record, Your Honor, your offer of contract is accepted for value and returned with consideration for discharge, settlement, and closure."  Judge Cummings sentenced Long to thirty-seven months in prison (consecutive sentences of twelve months on each of counts 1, 2 and 3 and one month on count 4) and concurrent one year terms of supervised release on each count.  No fine was imposed; restitution to the United States of $93,484.69 was ordered.

## ANALYSIS

### I.  Right to Self-Representation

A defendant has a right to represent himself at trial. *Faretta*, 95 S. Ct. at 2532.  An impermissible denial of self-representation cannot be harmless. *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008).  The defendant must

4

knowingly and intelligently forego his right to counsel, and must clearly and unequivocally request to proceed *pro se*. *Id*. If the right to counsel is to be waived, the trial court must conduct a *Faretta* hearing, cautioning the defendant about the dangers of self-representation and establishing, on the record, that the defendant makes a knowing and voluntary choice. *Id*. Nevertheless, the defendant may waive his right to self-representation through subsequent conduct indicating an abandonment of the request. *Id*. There is no constitutional right to hybrid representations whereby the defendant and his attorney act as co-counsel. *Id*.

A. *Long Did Not Clearly and Unequivocally Request to Proceed* Pro Se

*United States v. Cano* gives an example of a clear and unequivocal waiver of the right to counsel. In *Cano*, the defendant asked the court to dismiss his counsel and allow him to represent himself, stating that he wanted to "invoke his Constitutional Right to Self-Representation as to the matters before the court." *Id*. The court found that request to clearly and unequivocally assert the right to self-representation. *Id*. Like *Cano*, Long indicated to Magistrate Judge Koenig that he is "the attorney in fact" when the judge asked him at the June 25, 2008 hearing who he wanted to replace the public defender. At the June 25 hearing, Long filed a document purporting to fire the public defender and granting himself the power of attorney. Moreover, the magistrate judge understood that Long sought to represent himself because she ordered a *Faretta* hearing in response to Long's statements. Compounded on this are Long's several statements that if "any[one]" thought they represented Long, "they were fired." Unlike *Cano*, however, Long never clearly or expressly asserted either his right to represent himself or that he wanted to proceed *pro se*.

Many cases suggest that something more than just firing one's attorney is required before one clearly and unequivocally requests to proceed *pro se*. *E.g.*, *Moreno v. Estelle*, 717 F.2d 171, 174–75 (5th Cir. 1983). "[T]he right to counsel

5

is in force until *waived*, [and] the right to self-representation does not attach until *asserted.*" *Id.* at 174 (quoting *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982) (en banc)) (emphasis in original). *Moreno* found that the defendant did not waive his right to counsel because he told the court he wanted to fire counsel without explicitly informing the court that he wished to proceed *pro se.* *Id.* at 174–75. Next, in *Burton v. Collins*, 937 F.2d 131, 133–34 (5th Cir. 1991), this court found no clear and unequivocal wavier where a defendant informed the judge he wanted to fire his attorney and asked, "May I represent myself?" *Burton*, 937 F.2d at 132. The court interpreted Burton's question as an inquiry into the possible alternatives available. *Id.* at 134.

Finally, *United States v. Ibarra* is an unpublished opinion of this court the facts of which are somewhat similar to those in the instant case. No. 05-50934, 2007 WL 807038, at *2 (5th Cir. 2007). There, Ibarra's attorney told the trial court Ibarra "may prefer to represent himself." *Id.* at *1. After Ibarra stated the that he would not cooperate even if appointed another attorney, the following exchange took place:

> "[Defense Counsel]: Would the Court entertain a motion to allow Mr. Ibarra to proceed pro se?
>
> THE COURT: No. Don't give him any ideas.
>
> [Defense Counsel]: Well, he already has the idea, Your Honor. I wish I could take credit for giving him-
>
> THE COURT: He's already convicted himself [in a letter to the court], quite frankly. Anything he says is going to be-is not going to make any difference. I may find as a matter of law he's not a citizen. Period....
>
> THE COURT: June the 20th. You will represent him. And don't give him any ideas about pro se. It's bad enough having a fool for a client.
>
> IBARRA: Sir,-Your Honor can I say a word? . . . *I am 30 years old and I don't want nobody to represent me.* So I want you just to give

6

your final decision or decisions because I don't want to waste my time.

THE COURT: What do you mean you want a decision? Are you pleading guilty?

IBARRA: I don't want him. *I don't need no attorneys*. I already tell you that[.]"

*Id.* at *2 (emphasis in original). Citing *Burton*, the panel found that there were competing reasonable interpretations attributable to the defendant's inquiry into whether he could represent himself. *Id.* at *3 (citing *Burton*, 937 F.2d at 134). The panel noted that the defendant's statements appeared to have expressed his complaint of his detention and trial rather than a request to the right of self-representation. *Id.* at *4. Because Ibarra "failed to support counsel's two statements on the issue of self-representation," the panel also found that his counsel's statements did not amount to a clear and unequivocal request for self-representation. *Id.*

Here, Long seems to have made a request to fire his appointed attorney, but not a clear and unequivocal request to represent himself. In his initial appearance, Long purported to fire anyone that thought they represented him. At the end of that hearing, after the magistrate judge appointed a public defender, Long said "[t]his gentleman is hereby fired." The next hearing took place on June 25, 2008. At this hearing, Long again fired the public defender. Long told the judge he found a replacement. While the record is unclear, it seems that at this point, Long gave the judge some form of visual cue that he himself planned on replacing the public defender. Multiple times Long stated that "[he is] the attorney in fact" that he wanted to replace the public defender. Because of this, the magistrate judge believed the situation warranted a *Faretta* hearing.

As a result of Long's attempts to fire his attorney, the magistrate judge made multiple attempts to have a *Faretta* hearing. Long thwarted each attempt

until the day of trial. Long and the federal public defender next appeared before Judge Cummings on October 6, 2008. The first issue the federal public defender put before the court was the *Faretta* hearing and Long's request to represent himself. In response, Judge Cummings addressed Long:

> "THE COURT: All right. Mr. Long, do you wish to represent yourself in this case?
>
> THE DEFENDANT: Excuse me, Your Honor. No, sir.
>
> THE COURT: All right. Thank you very much. You may be seated."

Given his uncooperative and non-responsive nature, we believe that Long's prior comments are unclear and equivocal. Like *Ibarra*, Long's earlier comments may more aptly be characterized as a general rebellion against the system trying him, when the comments are taken in the full context of the record. *See Ibarra*, 2007 WL 807038, at *4. Long made multiple references to how he does not recognize the trial court. Beyond just his own attorney, Long wished to fire the government, the court security officers, the marshals, and the judge from representing him. In fact, Long repeatedly asserted throughout the proceedings that the Republic of Texas never properly entered the union, and therefore, the United States Federal Courts had no power over him. Before trial, Long wanted to fire his attorney. On the day of trial, he expressly *denied* to the district court that he wanted to represent himself. Right before sentencing, he once again wished to fire his attorney. As *Burton* noted, "[w]here a fundamental constitutional right, such as the right to counsel, is concerned, courts indulge every reasonable presumption against waiver. *Burton*, 937 F.2d at 133; *see also Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982) ("The right of self-representation entails a waiver of the right to counsel, since a defendant obviously cannot enjoy both rights at trial."). Here, Long did not clearly and unequivocally both waive his right to counsel and assert his right to self-representation. *See id.*

No. 09-10003

B. *Long Waived His Right to Self-Representation*

Even if Long had clearly and unequivocally asserted his right to self-representation, that right may be waived by his actions. *Faretta* recognized that the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. *Faretta*, 95 S. Ct. at 2541 & n.46. After *Faretta*, at least two circuits have held that obstructionist behavior may waive the right to self-representation. *E.g.*, *United States v. Brock*, 159 F.3d 1077, 1079 (7th Cir. 1998).[2] For example, the Seventh Circuit held that the disruptive defendant may lose his right to *pro se* status in *Brock*. 159 F.3d at 1079. Like Long, Mr. Brock filed motions asserting that neither his attorney nor any other attorney, was authorized to act on his behalf. *Id*. at 1078. The district court attempted to conduct a *Faretta* hearing. *Id*. Brock repeatedly demanded a "Bill of Particulars" and challenged the district court's authority. *Id*. Brock refused to answer the court's questions or cooperate in any way. *Id*. The trial judge appointed Brock stand-by counsel and directed the magistrate judge to inform Brock of the pitfalls of self-representation. *Id*. at 1079. Before the magistrate judge, Brock repeated his demands and refused to answer any questions. *Id*. After holding Brock in contempt multiple times, the trial court decided to revoke his *pro se* status. *Id*.

Not unlike *Brock*, Long's conduct in the instant case suggested disruptive and obstructionist behavior. After the second time the defendant attempted to fire the public defender, Magistrate Judge Koenig entered an order for a *Faretta* hearing for August 25th, 2008. The *Faretta* hearing began as scheduled, but

---

[2] *See also United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007) (affirming the conviction of a defendant who made numerous frivolous and repetitive filings, used files provided by the government in discovery to clog jail toilets, and threw feces into the jail's mail slot); *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1145 (11th Cir. 2005) ("Diaz sought to frustrate the completion of his trial by repeatedly changing his mind regarding self-representation at the guilt phase of the trial."); *United States v. Keiser*, 319 F. App'x 457, 458–59 (9th Cir. 2008).

Long refused to answer the judge's questions, instead merely replying with the same nonsensical statement "your offer of contract is accepted for value and returned with consideration for discharge, settlement and closure." After the court was understandably frustrated, Long asked for a sidebar conference with the judge. The judge refused and required all communication be made on the record, but offered to let Long speak to an individual from pre-trial services. Long declined to do so, but asked if the court could resume the hearing in two days. The court explained to him exactly what the hearing would cover when they reconvened.

As scheduled, the court reconvened two days later on August 27, 2008. Long once again stated that he wanted to fire his counsel. In response, the magistrate judge understood that, but stated Long would need to cooperate and allow the pre-trial services officer to question him so the court may get the information it needed for the *Faretta* hearing. Instead of cooperating, Long made the identical above quoted nonsensical statement about accepting an offer of contract from the judge. After repeatedly warning Long not to "carry on with these ridiculous statements that carry no meaning in this court or any court of law," the magistrate judge ended the hearing.

The magistrate judge held the next hearing on September 3, 2008. Again, Long began this hearing by stating that he would like to fire the public defender. From that point onwards, Long responded to every question Judge Koenig asked by simply repeating the above quoted nonsensical statement about accepting an offer of contract from the judge. Judge Koenig decided to release Long on personal recognizance, and let the district court judge conduct a *Faretta* hearing. Each time a magistrate judge had attempted to conduct a *Faretta* hearing, Long was extremely uncooperative. Long's actions led to the court pushing back the hearings until October 6. On October 6, Long *denied* wanting to represent

10

himself.    Like *Brock*, these facts tend to suggest that Long's behavior of itself may well have resulted in the waiver of his right to self-representation.

Long also argues, alternatively, that if he waived his right to self-representation, he reasserted it at the sentencing stage.  Courts have held that the *pro se* request may be untimely and, therefore, waived.  *E.g.*, *Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir. 2007) ("Wood did not move to proceed *pro se* until after the jury had already returned a guilty verdict against him, immediately before the sentencing phase of his trial, and the trial court therefore had the discretion to deny the motion.");  *United States v. Edelmann*, 458 F.3d 791, 808–09 (8th Cir. 2006) (request made four days before trial); *Howze v. Roe*, 92 F. App'x 515, 516 (9th Cir. 2004) (unpublished) (request made two days before trial).   Long relies on *United States v. Cano*, in which this court remanded for re-sentencing when the district court failed conduct a *Faretta* hearing after the defendant requested to represent himself eighteen days before sentencing. *Cano*, 519 F.3d at 515, 517.

Unlike *Cano*, Long requested to proceed *pro se the day* of the sentencing hearing.  Given Long's previous disruptive and uncooperative conduct, the trial court may have seen this as another delay tactic.  Throughout trial, the district court was concerned with Long's "Republic of Texas 'psychobabble,'" which, according to the district court, was intended to intimidate the court and frustrate the administration of justice.  Like *Wood*, we find that Long's assertion at sentencing was untimely.

Long also argues, alternatively, that he represented himself all along, and counsel was appointed from the beginning by Judge Bleil in Fort Worth *as* stand-by counsel without *any Faretta* hearing.[3]  Long argues that while the trial

---

[3] Long argues that this court should give weight to the Magistrate Judge Bleil's oral pronouncement that the public defender was stand-by counsel, not the written order appointing the public defender as counsel.  Like the oral pronouncement, the minute entry for

court may not have conducted a formal *Faretta* hearing, he was made aware of the dangers and disadvantages of self-representation. After Magistrate Judge Koenig set a *Faretta* hearing, Long requested to delay it for two days. When granting this request, the magistrate judge informed Long of what could be expected at the *Faretta* hearing. Long characterizes this preview as being fully briefed on the dangers of self-representation. However, *Faretta* clearly requires more than the defendant received. Assuming a defendant clearly and unequivocally requests to represent himself, the trial court still must make a finding that the defendant knowingly and intelligently waived his right to counsel and asserts his right to self-representation. *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008).

But even assuming Long was briefed properly under *Faretta* and had been representing himself, Long waived his right to self-representation.[4] Long expressly told the trial judge before trial that he did *not* want to represent himself. The public defender acted as counsel for the remainder of the trial. This court's opinion in *Lafevre v. Cain* is on point:

---

the initial appearance reads, "Order appointing federal public defender as standby counsel because Deft. refusal of Representation." However, the formal order that was also entered that day appoints the public defender as Long's counsel without mention of "stand-by" or other qualification. Even if we were to give weight to the oral pronouncement, the magistrate judge clarified orally that the public defender was stand-by counsel, "[w]*hile* [he's] in Fort Worth." (emphasis supplied). And, on May 23, 2008, Assistant Federal Public Defender Kime-Goodwin entered her appearance in the Lubbock Division as counsel for Long without any indication of stand-by or other limited status. Moreover, on September 5, 2008, Judge Cummings re-appointed the federal public defender as counsel. This was almost a month before Long filed his motion to dismiss based on the Speedy Trial Act.

[4] Long centers his argument that he did not waive his right to self-representation on a line from *Cano*: "In *United States v. Cano*, this Court indicated that it would 'indulge every reasonable presumption against waiver' of the right to *self-representation*." Brief of Defendant-Appellant at 31 (quoting *Cano*, 519 F.3d at 517) (emphasis supplied). *Cano* actually reads: "Where a fundamental constitutional right, such as the right to *counsel*, is concerned, courts indulge every reasonable presumption against waiver." *Cano*, 519 F.3d at 517 (emphasis supplied).

No. 09-10003

"[A] defendant can waive his *Faretta* rights, either by expressly requesting standby counsel's participation on a matter or by acquiescing in certain types of participation by counsel, even if the defendant insists that he is not waiving his *Faretta* rights. . . . [O]nce a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced. . . . [S]tandby counsel's participation [must] be 'over the defendant's objection' in order to erode the defendant's *Faretta* rights."

*Lefevre v. Cain*, 586 F.3d 349, 355–56 (5th Cir. 2009) (internal citations omitted). In *Lefevre*, this court found waiver after the defendant acquiesced to stand-by counsel participation, but never objected or provided a reason for his failure to object to that help. *Id.* at 356, 357.

We believe that Long's obstructionist behavior, coupled with Long, just before trial began, having told the district court that he did *not* wish to represent himself, warrant similar reasoning and a similar waiver result here.

## II. Speedy Trial Act

Long also appeals the district court's failure to address this October 3, 2008 *pro se* motion based on the Speedy Trial Act. At the time, Long was represented by counsel, so the trial court properly struck his *pro se* motion. *See United States v. Whitelaw*, 580 F.3d 256, 259 (5th Cir. 2009). Consequently, Long's failure to properly "move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal" under the Speedy Trial Act. 18 U.S.C. § 3162(a)(2).

## CONCLUSION

We affirm Long's conviction and sentence. First, Long was not denied his constitutional right to represent himself because he did not timely, clearly, and unequivocally assert it. Any attempts to assert that right were waived by his own obstructionist behavior combined with his negative answer to the district

13

No. 09-10003

court's inquiry whether he desired to represent himself.  Long waived his rights under the Speedy Trial Act because he failed to properly put the issue before the trial court.

AFFIRMED